CIVIL SERVICE COMMISSION OF NORTH LITTLE ROCK
v. McDOUGAL.

4-5488                                              129 S. W. 2d 589

Opinion delivered May 29, 1939.

*Laurence J. Berger* and *Floyd Terral,* for appellant.

*Sam E. Montgomery,* for appellee.

GRIFFIN SMITH, C. J. In an appeal by J. O. McDougal from an order of the Civil Service Commission of North Little Rock, the circuit court treated as a demurrer McDougal's motion to dismiss charges preferred against him by the Commission. The charges resulted in McDougal's dismissal from the position of chief of detectives and superintendent of the bureau of identification of the police department of the City of North Little Rock. The motion, when so treated as a demurrer, was sustained, with the order that ". . . the charges against J. O. McDougal are hereby dismissed. The court further orders that said J. O. McDougal be, and he hereby is, reinstated in the police department of the City of North Little Rock to the same rank, duties and compensation as when he was illegally suspended on the night of December 20, 1938."

The question to be determined is, Was McDougal illegally suspended?

Act 28 of the Forty-Ninth General Assembly, approved February 13, 1933, is an act creating a board of civil service commissioners of cities of the first class having a police department and all cities having organized fire departments, "To have control, management and jurisdiction of the officers and employees of said fire and police departments in their respective cities."

For the purpose of this opinion, the Board of Civil Service Commissioners will be referred to as the Commission.

The law's requirement is that the City Council shall, by ordinance, name three citizens as commissioners, one of whom shall be selected by the Commission as secretary, and who shall ". . . report the evidence at all trials and shall act as clerk when the board shall constitute a trial court."

Section 3 directs the Commission to ". . . prescribe, amend, and enforce rules and regulations governing the fire and police departments of their respective cities, and said rules and regulations shall have the same force and effect of law. They shall keep a record of its examinations and shall investigate the enforcement and effect of this act and the rules as provided herein."

The act sets out twelve specific rules which shall be adopted, and allows for promulgation of others not inconsistent with the act.

Mandatory Rule No. 7 provides for a period of probation not to exceed six months ". . . before any appointment or promotion is complete, during which period the probationer may be discharged, in case of an appointment, or reduced, in case of promotion, by the chief of police or of the fire department."

Mandatory Rule No. 10 provides for suspension ". . . for not longer than thirty days, and for leave of absence."

By Mandatory Rule No. 11 the Commission shall provide "For discharge or reduction in rank or compensation after promotion or appointment is complete, only after the person to be discharged, or reduced, has been presented with the reasons for such discharge or reduction, in writing. The person so discharged or reduced shall have the right within ten days from the date of notice or discharge or reduction to reply in writing, and should said person deny the truth of such reasons upon which such discharge or reduction is predicated and shall demand a trial, said Commission shall grant a trial

as provided herein. The reason and the reply shall constitute a part of the trial and shall be filed with the record."

Section 4 provides that "All employees in any fire or police department affected by this act shall be governed by rules and regulations set out by the chief of their respective police or fire departments after such rules and regulations have been adopted by the governing bodies of their respective municipalities."

Section 5 is: "No officer, private, or employee of any police or fire department affected by this act shall be discharged or reduced in rank or compensation without being notified in writing as provided herein. Such person shall have the right of reply and trial as provided herein and may be discharged or reduced only after conviction at said trial before the Commission."

Rules and regulations were adopted in May, 1934, by which it was provided:

"The chief of police shall be the executive head of the department, responsible to the Board of Commissioners for the maintenance of peace and order within the city, enforcement of the criminal laws of the state, and the ordinances of the city council. [He] shall be empowered by the Board of Commissioners to establish rules for the police department and to discipline those under his authority for violation of such rules and regulations. . . . The chief of police shall be the directing head of the department and shall exemplify in his own personal conduct the qualities of courtesy, consideration, justice, and thorough competency that is required of his subordinates. . . . Every officer of this department will be required to exemplify, in his personal conduct while on or off duty, the qualities of a gentleman and an officer. His personal habits, his language, and associations, are matters that not only concern his individual standing in the community, but reflect credit or discredit on the department."

Rule 4-a is: "Drinking of intoxicating liquor or being under the influence of liquor while on duty shall

cause the discharge of an officer, and excessive use of intoxicating liquors on or off duty will not be tolerated.''

December 10, 1938, J. N. Laman filed charges with the Commission, alleging that McDougal was found drunk while on duty. The Commission at once notified the chief of police (Gabe Pratt) that such charges had been filed, and directed that McDougal be immediately suspended. This order was complied with by Pratt, but nine days later Pratt informed the Commission he had restored McDougal to the latter's former status. McDougal was promptly told by the Commission that charges against him had not been disposed of, and he was directed not to return to work.

December 21 McDougal filed with the Commission a formal denial of the charges and demanded a hearing. Two days later the Commission wrote McDougal his request for a hearing had been granted, and that such hearing would be held in the city hall January 4, 1939. At the appointed time the hearing was conducted. Ten witnesses testified in support of Laman's charge. The defense offered no evidence. The Commission (January 6) notified McDougal he had been found guilty, and that he was dismissed from the service.

On appeal to circuit court, McDougal contended that the right to discipline, under the Commission's rules, rested entirely with the chief of police; that disciplinary measures had been exercised by the chief through the order of suspension; that after reinstatement the Commission was without authority to proceed; that in hearing charges involving violations of rules the Commission acted in a quasi-judicial capacity; that its jurisdiction was appellate, and not original, and that at the time the hearing was conducted there was nothing before the Commission for determination, the matter having been disposed of by Chief Pratt.

In its judgment the court found that ''. . . under Act 28 it is the duty of the chief of police, as executive officer of the police department, to handle [matters of discipline]; that he would have authority to suspend

and discharge, and that the person so discharged would have a right of appeal to the Civil Service Commission; that the chief of police would also have authority to certify the matter to the Civil Service Commission for its action, but in the absence of that, then the present case would have to be governed by the rules and regulations as exhibited. The question as to the failure of the chief of police to perform or not to perform his duties would be a matter for him to answer to the Board of Commissioners. For that reason, therefore, and solely on that issue, without going into the matter of the guilt, the court will find that the Board of Commissioners have exceeded their authority, and that the order dismissing the petitioner should properly be set aside, and that the petitioner should be reinstated and would be entitled to such pay as under the law he would be entitled."

January 9, 1939, the city, by ordinance, directed "That the Bureau of Identification and the office or position of Chief of Detectives in and for the City of North Little Rock, be, and the same are, hereby abolished."

It is our view that testimony before the Commission in support of Laman's charges amply sustained the Commission's findings. Laman testified he arrived at police headquarters about 2:40 a. m. McDougal was lying on the tile floor before a stove. His coat and hat were off, his vest unbuttoned, and he was otherwise disheveled.

Witness was a member of the city council. He called other members of the council. Later, McDougal was aroused from what the witnesses thought was a drunken stupor. He walked unsteadily, and asked, "Who hit me?—somebody hit me and dragged me off into this room." Laman and others smelled whiskey. There was no indication McDougal had been hit, nor was he in any manner injured.

Dr. V. E. Lyons, assistant city physician, found McDougal lying on the floor. He felt McDougal's pulse and asked if he were sick. McDougal mumbled something witness did not understand, and turned over. The odor

of alcohol was detected on McDougal's breath, and he had the appearance of one under the influence of alcohol.

None of the testimony pointing to McDougal's guilt is in dispute, other than by the defendant's denials as expressed in letters read into the record.

We do not agree with the trial court's declaration of the law.

The Commission, and not the chief of police, is the responsible agency. By § 3 of Act 28, the Commission is expressly charged with the duty of prescribing, amending, and *enforcing* its rules. The Commission is required to *investigate* the enforcement and effect of Act 28. An exception to the Commission's power is found in Mandatory Rule No. 7, which authorizes the chief of police, during the six months period of probationary employment, to "discharge, in case of an appointment, or reduce, in case of promotion."

Mandatory Rule No. 11 authorizes the Commission to provide for discharge or reduction in rank ". . . . only after the person so discharged, or reduced, has been presented with the reasons for such discharge or reduction," the notice to be in writing. It then becomes the duty of the Commission, when demand is made, to grant a trial.

It is true § 4 provides that all employees in the department shall be governed by rules and regulations set out by the chief, ". . . after such rules and regulations have been adopted by the governing bodies," etc., but this does not mean that when the Commission has approved expressed standards of conduct, as to which the chief of police has a duty of enforcement, the Commission is deprived of all authority, and must supinely acquiesce in any policy of discipline the chief may determine is proper. Certainly that official's power of supervision cannot rise above the source from which it was derived.

Act 28 provides for suspensions "for not longer than thirty days." Under the Commission's rules, and the law, we think the chief would have the right, irre-

spective of the Commission, to resort to suspension of an insubordinate or otherwise offending officer for the period mentioned. and unless the chief's action in so doing was arbitrary, the Commission would be bound thereby, in so far as the subject of discipline was concerned.

Certain details of administration may properly be delegated, if such details are purely ministerial; but the Commission, charged by law with the power to promulgate rules, cannot, in turn, delegate that power to another. The test is whether the power to make the rule is delegated, or whether authority as to its execution is delegated. The latter may be done; the former may not.

Under the sub-title "Delegation of Authority to Boards or Commissions," it is said at page 925 of volume 10 of American Jurisprudence: "In exercising its general authority and discretion the legislature has the constitutional right to create a board of civil service commissioners and to delegate to it the power to make rules, not inconsistent with existing laws, to conduct investigations and in the course thereof to compel the attendance of witnesses and the production of evidence, and generally to exercise whatever administrative measures may be necessary to effect the purposes of the civil service acts; and this is not considered as being a delegation of the power to enact laws or of judicial functions, but merely a delegation of administrative powers and duties."

Act 28 provides that rules promulgated by the Commission shall have the force of law. This is not an improper delegation of power, but the authority to make the rules must be read in connection with the expressed purpose of the statute, and "force of law" cannot be given to any rule or regulation the Commission might conclude would be appropriate, unless, in fact, such rule came within the purview of the legislation.

If we should affirm the lower court's judgment, we would say that the Commission (to which has been delegated authority to make necessary reasonable rules to

carry into effect the intent of civil service) once having made its rules, and having designated the chief of police executive head of the department, with power ". . .. to establish rules and regulations for the police department and to discipline those under his authority for violation of such rules and regulations," has thereby surrendered complete control of the department to such chief—an abdication not contemplated by the statute. Effect of this argument, if conceded, would be to say that once the chief's rules have been approved by the Commission, the creative body automatically loses its supervisory powers, and must abide the judgment or even the caprice of its own agent except in matters of appeal.

If this construction should be approved, then regardless of the nature of an offense charged against a member of the police force, the Commission could only refer the complaint to the chief for such administrative disposition as that officer might think proper. Assuming a serious infraction, and that charges against the accused should be dismissed with a mild admonition or a mere reprimand, there would be none to appeal. The accused could hardly be expected to disagree with such a verdict, and citizens and the Commission would be bound by the chief.

In the instant case Chief Pratt wrote the Commission, informing that body he had reinstated McDougal. He later stated that although he signed the letter, it was written by another; that it was brought to his home for his signature, and "pressure" was exerted to procure his co-operation.

Clearly, the purpose in persuading Pratt to assume jurisdiction and go through formality of having exercised disciplinary measures was to provide a basis for technical objections to anything the Commission might do. If Pratt's testimony is to be believed—and there is no evidence to the contrary—the idea was not his own.

On the question of sufficiency of evidence against McDougal (which has heretofore been referred to), Rule 4-a is conclusive. Two violations are mentioned: drink-

ing intoxicating liquor or being under the influence of liquor while on duty, and excessive use of intoxicating liquors on or off duty.

In the first instance—drinking intoxicating liquors or being under the influence of liquor while on duty— the officer offending is subject to discharge.

In the second case—excessive use of intoxicating liquor on or off duty—an intolerable condition is created.

It will thus be seen that the mere drinking of intoxicating liquor while on duty subjects the officer to dismissal.

The assistant city health officer, and members of the city council, testified they smelled liquor on Mc-Dougal's breath. His conduct and general attitude were such as to raise a presumption the liquor was intoxicating, and he is concluded by such evidence.

The judgment is reversed, with directions to the lower court to enter an order sustaining action of the Commission.