The Honorable Jack McCoy State Representative 712 McNeil Street Malvern, AR 72104
Dear Representative McCoy:
This is in response to your request for an opinion on the following two questions:
 1. Does the chief of police of a city police department of a city with a civil service commission have authority to fire or otherwise dismiss a civil service employee of the police department prior to the civil service commission conducting a hearing on the dismissal?
 2. Must an officer of a municipal police department obtain permission from the chief of police to work in a civilian capacity while off duty when the officer is not on standby or being paid by the department for his off duty hours, and the off duty work does not involve the use of police equipment nor does the officer represent himself as a police officer or city employee?
I assume that this question is asked with respect to a city of the first class operating under the mayor-city council form of government, also know[n] as the aldermanic form of government, and that the city has adopted the provisions of Act 28 of 1933 under which the Arkansas legislature enacted a comprehensive civil service law affecting police and fire departments in first class cities.
It is clear following a review of the relevant Code provisions that the answer to your first question is "yes" with regard to a probationer. Arkansas Code of 1987 Annotated 14-51-301(b)(7) states that the Civil Service Commission ("Commission") rules and regulations shall provide for a period of probation, and that "(d)uring the period, the probationer may be discharged, in case of an appointment, or reduced, in case of promotion, by the chief of the police or of the fire department." A.C.A. 14-51-301(b) (7)(B) (Supp. 1987).
A review of the case law in this area indicates, however, that a conclusive response with regard to nonprobationers requires consideration of the particular Commission's rules and regulations, as well as any police department rules and regulations adopted pursuant to A.C.A. 14-51-302.*
The Arkansas Supreme Court, in the case of Sanders v. City of Ft. Smith, 251 Ark. 494, 473 S.W.2d 183 (1971) acknowledged that Ark. Stat. Ann. 19-1603(11) and 19-1605.1 (now codified at A.C.A. 14-51-301(b)(11) and 14-51-308, respectively), which require written notice of the cause for discharge, do not state by whom the notice is to be given. 251 Ark. at 495. The Court went on to note, however, that the Civil Service Commission is authorized to make rules and regulations having the force and effect of law. Id. The Commission in that instance had adopted a regulation stating: "No civil service employee shall be discharged . . . without being notified in writing by the department head or the governing body of the city of such discharge . . . and the cause therefore at the time the action is taken.["] Id. The Court construed this to mean that a department head, such as the chief of the fire department, can be discharged only upon written notice given by the city's governing body. Id.
In Civil Service Commission of North Little Rock v. McDougal,198 Ark. 388, 129 S.W.2d 589 (1939), the Commission's rules and regulations named the chief of police as the executive head of the department and authorized him to discipline those under his authority, for violation of rules developed by the chief for the department. The chief of police in that case suspended an officer, in accordance with a Commission directive, but subsequently restored the officer to his former status. The Commission then pursued charges independent of the police chief.
In rejecting the lower court's finding that the Commission had no authority to proceed, the Supreme Court stated that "(t)he Commission, and not the chief of police, is the responsible agency." 198 Ark. at 394. It must be recognized, however, that this statement was made in the context of a challenge to the Commission's authority to pursue charges on its own following the police chief's reinstatement of a suspended employee. The Court did not question the chief's disciplinary authority, under the Commission's rules and rules developed by the chief for the department. Rather, it merely confirmed the Commission's supervisory powers in that instance, stating:
 It is true 4 (A.C.A. 14-51-302) provides that all employees in the department shall be governed by rules and regulations set out by the chief ". . . after such rules and regulations have been adopted by the governing bodies," etc., but this does not mean that when the Commission has approved expressed standards of conduct, as to enforcement, the Commission is deprived of all authority, and must supinely acquiesce in any policy of discipline the chief may determine is proper. Certainly that official's power of supervision cannot rise above the source from which it was derived.
 198 Ark. at 394
One final case merits consideration. In Tittle v. City of Conway,268 Ark. 1126, 599 S.W.2d 412 (1980), the Court affirmed a police officer's dismissal based upon action by the Commission, but specifically rejected the chief of police's power to discharge the officer under the statute and regulations in force.268 Ark. at 1130. The Court first noted that under Ark. Stat. Ann. 19-1603 (A.C.A. 14-51-301), the Civil Service Commission shall prescribe and enforce rules and regulations governing the fire and police departments. 268 Ark. at 1127. The rules and regulations for the City of Conway authorized the chief of police to suspend an officer. An officer could be dismissed for violation of department rules and regulations, "upon conviction." Id. at 1128. The Court held that the word "suspend" has a distinct meaning and ruled, in effect, by negative implication, that the police chief did not have the power to discharge the officer. Id. at 1130.
The foregoing cases illustrate the need to consult the particular Commission's rules and regulations, and any rules developed by the police chief which have been adopted by the city. One final note, however, must be made of an act passed during the recent legislative session. Act 439 of 1989 purportedly clarifies the powers and duties of Civil Service Commissions, stating under Section 1:
 The powers and duties of every Civil Service Commission established pursuant to Act 28 of 1933, as amended (Arkansas Code 14-15-101 et seq.), shall be and are hereby expressly limited such that the said Commissions shall not have any control nor shall said Commissions attempt to exercise any control over the normal and routine day to day operations of a police or fire department, directly or indirectly. No provision of A.C.A. 14-51-101, et seq. shall be construed to provide authorization to said Commission to have such authority.
Section 2 of Act 429 amends A.C.A. 14-51-301(c) to state that rules adopted by Commissions for enforcement of Chapter 51 of the Code shall not authorize ". . . any interference with the day to day management or operation of a police or fire department."
While we do not yet have the benefit of case law interpreting these provisions, it may be successfully contended that the "day to day management or operation" of a police department necessarily encompasses decisions involving the dismissal of civil service employees. The ruling in Tittle v. City of Conway, supra, may therefore be called into question following this expression of legislative intent, insofar as the Court's affirmation of the Commission's power to limit to [sic] the police chief's disciplinary powers.
In response to your second question, we are aware of no state law addressing these matters. This is an area, however, that could be properly addressed under Civil Service Commission and/or police department rules and regulations. We therefore suggest that reference be made to those rules.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
* Section 14-51-302 states: "All employees in any fire or police department affected by this chapter shall be governed by rules and regulations set out by the chief of their respective police or fire departments after rules and regulations have been adopted by the governing bodies of their respective municipalities."