Mark TOVEY *v.* CITY OF JACKSONVILLE

90-279                                    808 S.W.2d 740

Supreme Court of Arkansas
Opinion delivered May 6, 1991

*Kaplan, Brewer & Maxey,* by: *Philip E. Kaplan,* for appellant.

*Robert E. Bamburg,* for appellee.

ROBERT H. DUDLEY, Justice. Veronica Blanchard com-

plained to the Jacksonville Police Department that appellant Mark Tovey, a Jacksonville police officer, had sexual intercourse with her while he was on duty. The Internal Affairs Division of the police department conducted an investigation of the alleged incident. A report on the investigation was prepared and given to the chief of police. As a result, the chief suspended appellant from the force without pay for ten (10) days and placed him on probation for one year. Appellant appealed the disciplinary action to the Civil Service Commission of Jacksonville. After a hearing, the Commission increased the period of suspension to thirty (30) days without pay. Appellant appealed that decision to the circuit court. The circuit court upheld the action of the Commission. We affirm the circuit court.

Appellant first argues that the trial court erred in finding that the Civil Service Commission had the authority to increase the disciplinary punishment imposed by the police chief.

■■ Historically, civil service commissions have been authorized to modify disciplinary penalties imposed by a police chief. In *Civil Serv. Comm'n* v. *McDougal*, 198 Ark. 388, 129 S.W.2d 589 (1939), charges were filed with the commission alleging that a police officer was drunk on the job. The commission notified the police chief and directed him to suspend the officer immediately. The police chief did so, but nine (9) days later informed the commission that he had restored the officer to work status. The commission told the officer that the charges had not been disposed of and instructed him not to return to work. The officer demanded a hearing, after which the commission discharged him. On appeal to circuit court, the officer argued that the right to discipline rested entirely with the chief of police and that the commission was without authority to proceed. The trial court agreed with the officer's argument, but we reversed, explaining:

> It is true § 4 provides that all employees in the department shall be governed by rules and regulations set out by the chief, ". . .after such rules and regulations have been adopted by the governing bodies," etc., *but this does not mean that when the Commission has approved expressed standards of conduct, as to which the chief of police has a duty of enforcement, the Commission is*

*deprived of all authority, and must supinely acquiesce in any policy of discipline the chief may determine is proper. Certainly that official's power of supervision cannot rise above the source from which it was derived.*

. . .

*If we should affirm the lower court's judgment, we would say that the Commission* (to which has been delegated authority to make necessary reasonable rules to carry into effect the intent of civil service) *once having made its rules, and having designated the chief of police executive head of the department,* with power ". . . to establish rules and regulations for the police department and to discipline those under his authority for violation of such rules and regulations," *has thereby surrendered complete control of the department to such chief — an abdication not contemplated by the statute.* Effect of this argument, if conceded, would be to say that once the chief's rules have been approved by the Commission, the creative body automatically loses its supervisory powers, and must abide the judgment or even the caprice of its own agent except in matters of appeal.

*If this construction should be approved, then* regardless of the nature of an offense charged against a member of the police force, *the Commission could only refer the complaint to the chief for such administrative disposition as that officer might think proper. Assuming a serious infraction, and that charges against the accused should be dismissed with a mild admonition or a mere reprimand, there would be none to appeal.* The accused could hardly be expected to disagree with such a verdict, and citizens and the Commission would be bound by the chief.

( Emphasis added.) *McDougal,* 198 Ark. at 394-96. See also *Malvern Civil Serv. Comm'n* v. *Bass,* 252 Ark. 178, 477 S.W.2d 842 (1972). Similarly, we have held that a circuit court has jurisdiction to modify punishment fixed by the civil service commission. *City of Little Rock* v. *Hall,* 249 Ark. 337, 459 S.W.2d 119 (1970).

The foregoing holding, and its reasoning, establish that a

civil service commission is authorized to modify, by increasing or decreasing, the punishment imposed by a police chief. However, the opinion in *McDougal* contains a paragraph which appellant relies upon in making his argument:

> Act 28 provides for suspensions "for not longer than thirty days." Under the Commission's rules, and the law, we think the chief would have the right, irrespective of the Commission, to resort to suspension of an insubordinate or otherwise offending officer for the period mentioned, *and unless the chief's action in so doing was arbitrary, the Commission would be bound thereby, in so far as the subject of discipline was concerned.*

(Emphasis added.) *McDougal*, 198 Ark. at 394-95. This paragraph is contrary to the quoted reasoning that surrounds it, and can only be described as perplexing dicta. To the extent this paragraph may be in conflict with this opinion, it is overruled.

▆▆▆▆ Appellant additionally asserts that regardless of whether the commission in the past had the authority to modify the punishment, it does not now have that authority because the governing statute, Ark. Code Ann. § 14-51-301(c) (Supp. 1989), has been amended to provide:

> (c) The commission shall adopt such rules not inconsistent with this chapter for necessary enforcement of this chapter, *but shall not adopt any rule or rules which would authorize any interference with the day-to-day management or operation of a police or fire department.*

(Emphasis given to show portion added by 1989 amendment.) Appellant argues that in increasing his suspension the commission interfered with the day-to-day management of the police department, something it is forbidden to do under the amended statute. The argument overlooks the fact that the commission is expressly charged with enforcing the rules and regulations governing police departments. Ark. Code Ann. § 14-51-301 (1987). In addition, the General Assembly is presumed to be familiar with the holdings of this Court in enacting legislation. *McEntire & Sons, Inc. v. Hart Cotton Co.*, 256 Ark. 937, 511 S.W.2d 179 (1974). If the General Assembly had intended to eliminate commission authority to modify disciplinary penalties,

it would have made such an intention clear as such a change would represent a significant departure from our case law. In sum, the modification of punishment, after a statutory hearing, cannot be construed as "interference with the day-to-day management or operation of a police or fire department." Instead, it is the statutorily authorized enforcement of a regulation.

Appellant next argues that the trial court erred in finding that he engaged in sexual conduct with Ms. Blanchard while on duty. Our standard of review in cases of this nature is to determine whether the trial court's finding of fact is clearly against the preponderance of the evidence. ARCP Rule 52; *Dalton* v. *City of Russellville*, 290 Ark. 603, 720 S.W.2d 918 (1986). The finding is not clearly erroneous.

Appellant set out numerous alleged ambiguities and contradictions in the testimony; however, the determination of credibility rested with the circuit court, not this Court. The circuit court found Ms. Blanchard's recorded testimony from the commission hearing to be credible. That testimony is, in part, as follows:

A.   I had someone else call him. I had my boss at Pizza Pro call. He called the police department and the radio dispatcher took the message for Sergeant Tovey to contact . . . Pizza Pro.

Q.   And did Mark Tovey come to Pizza Pro at that time?

A.   He showed up with his lights on.

Q.   With his blue lights on?

A.   Yes.

. . .

Q.   Was he in uniform?

A.   Yes, sir.

Q.   And was in a patrol car?

A.   Yes, sir. He was in his patrol car.

Q.   And asked you to meet him at Paradise Park. Is that right?

A. Follow him.

Q. Follow him. Did you follow him to Paradise Park?

A. Yes.

Q. What happened?

A. He pulled in. There's a clump of trees right near the opening, and he pulled in and asked me to park in front of him. And I got out of the car and he said, "Stay here a minute." And he went over and went to the bathroom in the trees. And I waited by the car and he came back and we started kissing and it didn't take very long and then we had intercourse.

Affirmed.