The Honorable Gus Wingfield State Representative P.O. Box 239 Delight, Arkansas 71940-0239
Dear Representative Wingfield:
This is in response to your request for an opinion on the following questions:
 1. Can a local Civil Service Commission demand that city employees submit to a credit check and subsequently fire, remove his/her name from promotion list or reprimand the employee for refusing that credit check?
 2. Is it lawful for a Civil Service Commission to operate or manage a local office or agency? If the answer to this question is "no," would the practice stated above not be considered day-to-day management?
We have received an addendum to your request from Representative Jodie Mahony, who adds the following question:
 3. Does the Civil Service Commission have the authority to include in an officer's personnel file a note stating that the officer has refused to release his credit report?
You do not state to what use the "credit checks" will be put. You ask merely whether they can be required and whether employees may be terminated, not promoted, or reprimanded for failing to submit.
It is my opinion that the answer to your first question is "no." A civil service commission cannot fire, refuse to promote, or reprimand an existing employee for refusing to submit to a credit check. Although under federal law the city can obtain the information from a credit reporting agency without the employee's permission, it cannot, in my opinion, under our state civil service statutes and under constitutional principles, lawfully use the credit check against existing employees. It is therefore not necessary to the enforcement of the statutes, and as such a civil service commission has no authority to enact a rule requiring these credit checks. It is my opinion, additionally, that these "credit checks," if otherwise lawful, would not constitute the "day-to-day management" of the work force, and that the issue of placing a note in the employee's personnel file stating that the employee has refused to submit to a credit check has been mooted by my conclusion that a commission does not have authority to conduct such checks against existing employees.
Some clarification of your questions is necessary before outlining the basis of the above conclusions. The questions are couched in terms of employees agreeing to "submit" to credit checks. It should be noted in this regard that under the "Fair Credit Reporting Act," 15 U.S.C. 1681a et seq., it appears that a governmental employer can access or obtain a "consumer report" or credit check on a prospective or current employee without the employee's permission. See 15 U.S.C. § 1681b(3)(B) (disclosures for employment purposes), 15 U.S.C. § 1681f
[disclosure of identifying information (not credit information) to governmental agencies] and Report of the Committee on Banking and Currency, Fair Credit Reporting, Sen. Rep. No. 91-517, 91st Cong., 1st Sess. at 6 (1969), stating that:
 The disclosure of information to governmental agencies is limited to identifying type information . . . unless the governmental agency has obtained a court order or is a bona fide creditor, insurer, employer, or licensor. [Emphasis added.]
See also Hoke v. Retail Credit Corporation, 521 F.2d 1079
(4th Cir. 1975), cert. denied, 423 U.S. 1087 (1976); UnitedStates v. Puntieri, 379 F.Supp. 332 (D.N.Y. 1974); and RetailCredit Corp. v. Miami Branch Office, 357 F.Supp. 347 (D.D.C. 1973), rev'd on other grounds, 515 F.2d 988 (D.C. Cir. 1975).
There are, however, some requirements that the employee be made aware of the request for the report and the contents thereof.See 15 U.S.C. § 1681d and 15 U.S.C. § 1681k.
Of course, if the city wishes to obtain the consent or cooperation of employees with regard to the credit check, nothing in the Fair Credit Reporting Act would preclude this. Seegenerally 15 U.S.C. § 1681b(2). As we will see, however, Arkansas law may.
With that point clarified, I may now address in detail your first question, which is whether the city may demand credit checks on its employees and fire or not promote employees who fail to submit. Initially, it should be noted that the authority of civil service commissions is set out in the Arkansas Code at A.C.A. §14-49-101 through -313 (nonuniformed employees in cities over 75,000 population), § 14-50-101 through -313 (nonuniformed employees in cities with 20,000 to 75,000 population) and §14-51-101 through -311 (civil service for police and fire departments). Each of these subchapters gives the civil service commissions set up thereunder the authority to make rules and regulations to implement the statutes. I assume that the practice of requiring credit checks would be set out by rule of the commission. See Civil Service Comm'n v. Cruse, 192 Ark. 86,89 S.W.2d 922 (1936) (stating that commission could not try anyone for a violation of a rule unless they had prescribed such a written rule). Civil service commissions are granted authority to adopt rules governing the employees covered under those subchapters. A.C.A. § 14-49-304(a)(1); § 14-50-304(a)(1); and §14-51-301(a)(1). Each civil service commission may also adopt rules and regulations not inconsistent with the subchapter for the necessary enforcement of the statutes. A.C.A. § 14-49-304
(c);[1] § 14-50-304 (c); and § 14-51-301(c) (Cum. Supp. 1991), (as long as it does not interfere with day-to-day management, A.C.A. § 14-51-212 (Cum. Supp. 1991), and §14-51-301(c)). You do not state to what purposes the "credit checks" will be put. Your question is merely whether they may be required, and whether an employee may be terminated or disciplined or not promoted because of a failure to submit. I assume then that your question addresses the requiring of these credit checks on current employees. The question of the use of these credit checks becomes relevant, however, because the use to which they will be put is probative of whether they are adopted to implement, or "necessary" to carry out the civil service statutes. With regard to nonuniformed employees, the commission can promulgate rules for the promotion of current employees based upon competitive examinations of efficiency, character, and conduct. A.C.A. § 14-49-304(9)(A); and § 14-50-304(9)(A). It may be contended that the commission could check an existing nonuniformed employee's credit as a examination of his or her "character" for promotion purposes. The Arkansas Supreme Court, interpreting similar language, however, appears to have rejected this contention, and held that an examination is the only permissible criteria. Bradley v. Bruce, 288 Ark. 342,705 S.W.2d 431 (1986). For uniformed employees, the tests for promotion may include written, oral, or practical exams, length of service, efficiency ratings and educational or vocational qualifications. A.C.A. § 14-51-301(9)(A) (Cum. Supp. 1991). Promotion lists are compiled from these tests. It is unclear under the statute whether the expression of these various types of tests for promotion is exclusive, or whether these are the only types of factors that may be considered for promotion. It appears that the answer is the former. See generally,Bradley v. Bruce, supra, and Worth v. Civil ServiceCommission, 294 Ark. 643, 746 S.W.2d 364 (1988) (stating that because seniority was not listed, it could not be used as a promotion factor, (decided prior to amendment of statute)).
Thus, it appears that the civil service commission could not lawfully use the results of a credit check when considering the promotion of existing employees. See however, Bradley v.Bruce, supra, (Hays J. dissenting). Therefore, such credit checks would not be "necessary" to carry out the statutes as to promotions of existing employees. As stated previously, the statutes seem to limit a commission's authority to promulgate rules and regulations to ones which are for "necessary enforcement" of the statutes. At the least, such rules should be adopted to implement the statutes.
The statutes do not address, however, the purposes for which a current civil service employee may be discharged. Could a local civil service commission lawfully need a credit check in enforcing the statutes as to the dismissal of current employees? That is, is it "necessary" to enforcement of the statutes as to the termination of employees? Would it be within the commission's authority to adopt rules governing its employees? The commission is free to prescribe rules and regulations of conduct for employees and to impose termination as a punishment for violation of these rules. Many of these rules may not be strictly "necessary" to enforce the statutes, but would be within the commissions authority. Cf. Ward v. City of Fort Smith,201 Ark. 1117, 148 S.W.2d 164 (1941). On the other hand, the commission cannot enact rules which are not incident to their statutory functions. Schalz v. McHenry County Sheriff's Dept.Merit Comm., 100 Ill. Dec. 553, 113 Ill.2d 198, 497 N.E.2d 731
(1986).
It is unclear, in my opinion, whether the requirement and use of credit checks on existing civil service employees is "necessary" to carry out the civil service statutes. Historically such commissions are given broad authority to enact rules. It appears, however, in this instance that any use of the credit checks against existing employees might pose constitutional problems. If the commission requests and obtains the credit checks, it must be assumed that they intend to use them or consider them in some fashion, and if there are constitutional infirmities with the intended use of the credit checks, then they are perforce not "necessary" for or incident to the enforcement of the statutes. The question of whether a credit check criteria may be imposed upon existing employees under threat of termination thus becomes one of constitutional dimensions.
Potential constitutional challenges include a First Amendment Privacy argument, or a due process challenge. In my opinion, it is unlikely that a court would hold an interest in an employee's credit report protected by the First Amendment, where a federal law allows the dissemination of such information to individuals for limited purposes, in this case for employment purposes. Seeagain, 15 U.S.C. 1681a et seq. (the "Fair Credit Reporting Act"). It is my opinion, however, that a "due process" challenge would present a closer question. It is generally held that there is no "property" or "liberty" interest in public employment, unless such a right is created by state law or similar independent source. Bishop v. Wood, 426 U.S. 341, (1976).[2] Our Arkansas Supreme Court has never expressly held whether the Arkansas civil service statutes create a property interest in civil service employees. It has hinted, however, that no such right exists. See Dalton v. City ofRussellville, 290 Ark. 603, 720 S.W.2d 918 (1986). It may have vitiated this hint, however, in Virden v. Roper, 302 Ark. 125,788 S.W.2d 470 (1990). Our Supreme Court has thus not decided the question. If a property right exists, the test employed to determine whether a particular practice endangering this right is constitutional is the so-called "rational basis" test. Under this test, legislation, or in this case, a civil service rule or regulation, will be upheld if there is any "rational basis" for it. The objective is not to determine what the exact reason for the practice is, but whether there is any conceivable rationale which would support it. It has also been stated that a state may not impose arbitrary or discriminatory employment criteria.Norton v. Blaylock, 285 F.Supp. 659 (W.D. Ark. 1968), aff'd409 F.2d 772 (8th Cir. 1969). This is a very lenient test, and will involve a consideration of whether the local civil service commission could have reasonably concluded that the checking of employee credit history would rationally relate to the production and maintenance of a better qualified group of employees, or whether the decision is indeed "arbitrary." There is absolutely no helpful case law on this point. See however, generally,Board of Education of the City School District of the City ofNew York v. New York State Public Employment Relations Board,555 N.Y.S.2d 659, 60 Ed. Law Rep. 909 (1990); and United Statesv. City of Chicago, 385 F. Supp. 543, (N.D. Ill. 1974),disagreed with, Washington v. Davis, 426 U.S. 229 (1976), (holding the checking of socio-economic status of applicants was discriminatory against minorities for Title VII purposes.)[3]
The resolution of this question may depend to a degree on what particular employees are involved. For example, checking the credit histories of civil service employees whose job involves the handling of money or the entrusting of other property or financial matters may be much more rationally related than for other employees. See, e.g., EEOC v. American National Bank,
1979 Westlaw 25, (E.D. Va. 1979) at 33. Although the test is a lenient one, and will only be applied if a property interest is found to exist in an Arkansas civil service position, in my opinion the question of whether there is an rational basis to check the credit of existing employees is a close one. Although the use of such credit checks might be more rational in the case of new prospective employees, as part of a background check or other reference gathering process, such a process would appear unnecessary with respect to existing employees. These employees have built up a work record with the department on which their qualifications for continued employment or promotion can be based. Requiring a credit check on employees who have built up this work record, some for many years, would in my opinion be irrational and arbitrary. In any event, it would not be "necessary" to carry out or adopted to implement the civil service statutes.
It is therefore my opinion that the answer to your first question is "no;" a civil service commission cannot fire, refuse to promote, or reprimand an existing employee for refusing to submit to a credit check. Although under federal law, it appears that the city can obtain the information from a credit reporting agency without the employee's permission, it cannot, in my opinion, under our state civil service statutes and under constitutional principles, lawfully use the credit check against existing employees. It is therefore not necessary to the enforcement of the statutes, and as such a civil service commission has no authority to enact a rule requiring these credit checks. Your first question does not appear to address the requirement of credit checks against prospective employees, and as such I express no opinion on the validity of that practice.
Your second question is whether it is lawful for a civil service commission to "operate or manage a local office or agency." To the extent you mean a local city "agency" employer whose employees are governed by a local civil service commission, the answer is "no." Although civil service commissions are given broad authority to make rules, their authority is more in the nature of personnel management, and not in the day-to-day management of the agency. See Civil Service Comm. v.McDougal, 198 Ark. 388, 129 S.W.2d 589 (1939), and A.C.A. §14-51-212 (Cum. Supp. 1991), and § 14-51-301(c) (Cum Supp. 1991). You then ask if the answer is "no," whether the practice of credit checks would not be considered day-to-day management. It is my opinion that the use of these credit checks would not be considered day-to-day management; but as we have seen, their use as to existing employees, in my opinion, is unlawful.
The final question for resolution, posed by Representative Mahony is whether a note can be placed in an employee's personnel file stating that the employee has refused to submit to a credit check. This question has been mooted by my conclusion that such credit checks as to existing employees would be unlawful. If the use of such credit checks is unlawful, it is unnecessary to place a note in the employee's personnel file stating that he has refused to submit to it.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Additionally, it is stated that civil service commissions for nonuniformed employees in cities with populations over 75,000 may make rules and regulations which are not "excepted" by the statutes. See A.C.A § 14-49-(a)(1). It is unclear, however, how this is construed along with language of the same statute stating that such regulations must be necessary to carry out the subchapter.
[2] It has been held that the mere loss of employment alone does not implicate an employee's liberty interest under the due process clause. Mysinger v. Foley, 651 F. Supp. 328 (W.D. Ark. 1987), Karr v. Townsend, 606 F.Supp. 1121 (1985). There would appear to be no violated liberty interest unless the civil service commission disseminated or "published" the unfavorable credit information. Hogue v. Clinton, 791 F.2d 1318 (8th Cir. 1986), cert. denied, 479 U.S. 1008 (1986).
[3] See also generally, 15 U.S.C. 1674 (prohibiting discharge of employee whose wages have been garnished for one debt; Wallace v. Debron Corporation, 494 F.2d 674 (8th Cir. 1974), (prohibiting the dismissal of an employee whose wages had been garnished for more than one debt); and 11 U.S.C. § 525(b), (prohibiting discrimination by private employers against employees or prospective employees filing for bankruptcy protection).