The Honorable Robbie Wills State Representative Post Office Box 306 Conway, AR 72033-0306
Dear Representative Wills:
I am writing in response to your request for an opinion on several questions that have been raised by the Conway Civil Service Commission (hereinafter "Commission") concerning the interplay between the Commission's rules and regulations and the rules and regulations promulgated by the Arkansas Commission on Law Enforcement Standards and Training ("ACLES"). You have enclosed a copy of the Civil Service Commission's rules and regulations, from which you have excerpted the following:
 To be considered for employment as a police officer with the CPD [Conway Police Department], applicants must meet the following minimum qualifications, most of which are promulgated by the Arkansas Commission on Law Enforcement Standards ("ACLES"). In the event of additions or modifications adopted by the ACLES, such changes shall be followed, and will be included in this section without need of a public hearing:
 * * * 6. Be of good character as determined by a thorough background investigation.
Conway Civil Service Commission Rules and Regulations, Chp. 2 ("Hiring and Selection Process"), § 2.6 (June 26, 2006). *Page 2 
As further background information, you have excerpted the following from the ACLES minimum standards:
 Every officer employed by a law enforcement unit shall:
 (e) Be of good character as determined by a thorough background investigation as prescribed in Specification S-3, The Background Investigation.
ACLES Manual of Regulations, Reg. 1002(3)(e) (4[th] rev. 1999).
 The results of the background investigation shall ultimately be evaluated by the department head and/or the hiring authority to determine whether the applicant is suitable for employment. All doubts in personnel suitability matters shall be resolved in favor of the department.
Id., Specification S-3, "Recommended Procedures," subsection 10.
Your specific questions are as follows:
 1. If the Conway Police Department does a background check on a candidate for hire who is participating in civil service testing and the Chief disqualifies a candidate pursuant to Specification S-3 (the background check) does this authority conflict with the civil service commission's authority to make an evaluation of "good character" under its rules?
 2. If there is a conflict between a determination of character pursuant to civil service rules and a determination pursuant to the Chief's conclusion pursuant to Specification S-3, does the Chief or the Commission have the final word on "good character?"
 3. Who is the "hiring authority" pursuant to Specification S-3 in a city with a civil service commission? The Commission or the Police Chief? *Page 3 
 4. Can the Police Chief remove or disqualify a candidate who has been certified by the Civil Service Commission to a list of eligible candidates after testing based upon the candidate's failure of a background check?
 5. If the answer to 4 above is yes, would the Civil Service commission be liable to the disqualified candidate for discrimination or other alleged unfairness in the moral character determination which was made by the Chief?
 6. Under what authority could the Civil Service Commission challenge a disqualification by the Chief pursuant to his authority pursuant to the Commission of Law Enforcement Standards statutes and regulations?
 7. Are the names, scores and rankings of entry level, non-employee fire or police applicants subject to release pursuant to an FOI request? Does A.C.A. § 14-51-301(b)(2)(B)(i) provide any basis for exempting such entry level scores and rankings of other applicants if the FOIA request is made by a fellow applicant?
RESPONSE
In my opinion, your first, second and sixth questions are based upon an incorrect assumption that the minimum standards promulgated by the ACLES authorize the Chief of the Conway Police Department to disqualify a candidate from eligibility for a position in the Department. The Chief may decide not to hire a candidate based upon the background investigation. But eligibility is established through open civil service examinations, and I do not interpret the regulations promulgated by ACLES as taking into account civil service testing. Accordingly, the Chief in my opinion may not remove or disqualify a candidate from a list of eligible candidates that has been certified by the Conway Civil Service Commission. With regard to your third question, the term "hiring authority" in ACLES Specification S3 in my opinion simply reflects the fact that someone other than the department head may be responsible for hiring. The answer to your fourth question is "no," in my opinion. It is unnecessary to respond to your fifth and sixth questions. The answer to the first part of your seventh question is generally "yes," in my opinion. In my opinion, the answer to the second part of this question is "no." *Page 4 
 Question 1 — If the Conway Police Department does a background checkon a candidate for hire who is participating in civil service testingand the Chief disqualifies a candidate pursuant to Specification S-3(the background check) does this authority conflict with the civilservice commission's authority to make an evaluation of "good character"under its rules?
As you have noted, the minimum standards promulgated by the Arkansas Commission on Law Enforcement Standards and Training include a requirement that police officers "[b]e of good character as determined by a thorough background investigation . . ." Manual of Regulations at 41, Reg. 1002(3)(e). These minimum standards are established pursuant to A.C.A. § 12-9-104(3)(A)(i) (Supp. 2007), which empowers the ACLES to "[e]stablish minimum selection and training standards for admission to employment as a law enforcement officer." The Conway Civil Service Commission (hereinafter "Commission"), pursuant to its duty and authority to provide for the qualifications of applicants, see A.C.A. § 14-51-301(b)(1)(A) (Supp. 2007), has incorporated the "good character" requirement into its rules and regulations governing the Conway Police Department (hereinafter "CPD"). Commission Rules and Regulations, Chp. 2, § 2.6, supra. The Commission's concern regarding a possible conflict between its rules and the ACLES standards arises from the "Specification" that correlates to ACLES Regulation 1002(3)(e). The ACLES Specification S-3 provides:
 In compliance with Section 1002(3)(e) of the Regulations, a background investigation must be conducted for each applicant employed as a law enforcement officer under the Act. The purpose of the background investigation is to find character traits which might prevent the applicant from becoming a successful law enforcement officer.
Manual of Regulations, supra at 66.
The recommended procedures under the Specification include the applicant's completion of "a detailed personal history statement on which the [background] investigation will be based," and the investigation being conducted by "an experienced officer." Id. Of particular relevance to your question, Specification S3 states:
 The results of the background investigation shall ultimately be evaluated by the department head and/or the hiring authority to *Page 5 
determine whether the applicant is suitable for employment. All doubts in personnel suitability matters shall be resolved in favor of the department.
Id. at 68 (emphasis added).
Your first question posits a scenario where "the Chief disqualifies a candidate [for hire] pursuant to Specification S-3." Your specific question is whether "this authority conflicts with the [Commission's] authority to make an evaluation of `good character' under its rules." The Commission's rules state in relevant part that "[a]ny applicant who, at any time during the selection process, fails to meet the minimum qualifications . . . will be ineligible to continue in the selection process." Rules and Regulations, supra, Chp. 2, § 4. It appears from the phrasing of your question that the Commission makes the determination under its rules whether an applicant satisfies the "good character" requirement or is disqualified on that basis, hence the concern about a conflict with Specification S-3.[1]
In my opinion, Specification S-3 does not empower the Police Chief to disqualify a candidate for hire who is participating in civil service testing. I realize that Spec. S-3 may at first blush appear to do just that, given the Chief's position as head of the CPD. He also makes the final hiring decision. See A.C.A. § 14-51-301(b)(6) (Supp. 2007) (providing for "[c]ertification to the department head of the three (3) standing highest on the eligibility list for appointment for that rank of service, and for the department head to select for appointment or promotion one (1) of the three (3) certified to him. . . ."). Seealso Commission Rules and Regulations, supra, Chp. 2, § 5 ("Upon certification of the list [of successful candidates] by the Commission, the Police Chief . . . may hire any of the three ranked highest on the certified list."). After further reviewing the ACLES rules and regulations, however, I have determined that the ACLES minimum standards are not written with a view *Page 6 
to civil service testing and do not take into account the employment process under civil service laws.
The ACLES regulations provide that "[t]he minimum standards for employment or appointment must be complied with as contained herein before employment" and "[t]he decision to employ an applicant should depend upon the results and recommendations received by the investigators and examiners . . ." Manual of Regulations,supra, Reg. 1002(5). The ACLES regulations thus establish employment criteria and address other particular matters in anticipation of the employment decision. See also id. at Reg.1002(3)(h) (requiring that every officer employed shall "[b]e interviewed personally prior to employment by the department head or his representative, or representatives to determine such things as the applicant's motivation, appearance, demeanor, attitude and ability to communicate."). But these regulations do not address the actual process by which the employment decision is made. This is evidenced in particular by the apparent assumption under the ACLES minimum standards that the "department head" has sole responsibility for evaluating an applicant's suitability for employment. For instance, Specification S-5, which correlates to the physical examination requirement under Regulation 1002(3)(g), states that "[a] department head should consider the form incomplete until question 23 [concerning any `reservations' about the candidate's physical capacity] is completed by the examining physician."Id., Spec. S-5 (under "Recommended Procedures.") Clearly, this provision assumes that no one other than the department head has a role in determining whether the minimum standards are met. The focus is on the standards, and not the selection process itself. In my opinion, the ACLES regulations were not written with a view to the selection process. In other words, they do not take into account civil service procedures.
Accordingly, it is my conclusion that the ACLES minimum standards cannot reasonably be interpreted to address any lines of authority as between a civil service commission and a police chief. More specifically, I do not interpret the ACLES regulations as requiring that the Chief be given an opportunity to disqualify an applicant for hire who is participating in civil service testing. This latter process involves "[o]pen competitive examinations to test the relative fitness of applicants for the positions." A.C.A. § 14-51-301(b)(2)(A) (Supp. 2007). The testing process culminates in the creation of "eligibles lists" naming the "successful candidates in the order of their standing in the examinations." Id. at (b)(4)(A)(i). The examinations and the creation of the lists of eligible candidates are governed by the board of civil service commissioners under rules and regulations that "have *Page 7 
the same force and effect of law." Id. at (a)(2). See also Amason v.City of El Dorado, 281 Ark. 50, 661 S.W.2d 364 (1983) (civil service regulations adopting testing procedures not prohibited under the civil service law, held to have the effect of law.).
The Commission plainly may not promulgate regulations that are contrary to state law. See Ark. Const. art. 12 § 4 and A.C.A. § 14-42-601(a)(2) (Repl. 1998). See also Amason, supra, and Civil Serv.Comm'n v. McDougal, 198 Ark. 388, 129 S.W.2d 589 (1939). Nor can its regulations contradict those promulgated by the ACLES. See Op. Att'y Gen. 98-246 (opining that rules promulgated by the ACLES can take precedence over civil service commission rules because "the Arkansas Commission on Law Enforcement Standards and Training has statewide jurisdiction over all law enforcement agencies, whereas municipal civil service commissions have jurisdiction only over the local fire and police departments."). I perceive no conflict, however, between the Commission's rules and the ACLES rules. The Commission limits the pool of applicants based upon a background check and consideration of "good character," consistent with the ACLES regulations. The investigation is conducted, presumably, by an "experienced officer," following the procedures recommended under ACLES Specification S-3, supra. The results are then evaluated by the Commission, or by the Human Resources Department as the Commission's delegee. See Commission Rules andRegulations, Chp. 2, § 4 ("Selection Process"). It seems that the Commission could involve the Chief in this evaluation process; but I do not believe that is required. The matter of deciding whether applicants have met the minimum standards ultimately falls to the Commission, pursuant to that agency's power and duty to create lists of eligible candidates. As explained above, I do not view ACLES Specification S-3 as impacting this examination process. Accordingly, there is no question of which should take precedence — the ACLES regulations or the Commission's rules. The two are not in conflict, in my opinion.
In response to your first question, therefore, ACLES Specification S-3 in my opinion does not purport to empower the Police Chief to disqualify a candidate for hire who is participating in civil service testing. The Specification might be interpreted to require the Chief to evaluate the results when deciding which candidate to hire from the three standing highest on the list that has been certified by the Commission.See A.C.A. § 14-51-301(b)(6) and Rules and Regulations, supra, Chp. 2, § 5. But in my opinion the Chief may not "disqualif[y] a candidate pursuant to Specification S-3," as contemplated by your question. *Page 8 
 Question 2 — If there is a conflict between a determination ofcharacter pursuant to civil service rules and a determination pursuantto the Chief's conclusion pursuant to Specification S-3, does the Chiefor the Commission have the final word on "good character?"
As explained above, I see no conflict. The Chief may decide not to hire a candidate based upon the background investigation, but in my opinion ACLES Specification 3 does not take into account civil service testing to determine eligibility.
Question 3 — Who is the "hiring authority" pursuant to SpecificationS-3 in a city with a civil service commission? The Commission or thePolice Chief?
In my opinion, the term "hiring authority" under ACLES Specification S-3 was not necessarily used to designate either the Commission or the Police Chief. Rather, it probably simply reflects the fact that someone other than the department head may be responsible for hiring. See,e.g., Op. Att'y Gen. 2000-319 (discussing the mayor's "general superintendence" over a city police department pursuant to A.C.A. §14-52-101, and citing Op. Att'y Gen. 93-268, which opined that absent statutory directives to the contrary, the hiring and firing of municipal employees may be controlled by municipal charter and ordinances, i.e., by the city council). The civil service commission might be the "hiring authority" in the limited instance where a city's governing body has delegated to the commission the authority to appoint the chief of police. See A.C.A. § 14-42-110(a)(2) (Repl. 1998). But a civil service commission does not typically hire police officers. I therefore do not believe the term "hiring authority" necessarily refers to either the Commission or the Police Chief.
Question 4 — Can the Police Chief remove or disqualify a candidate whohas been certified by the Civil Service Commission to a list of eligiblecandidates after testing based upon the candidate's failure of abackground check?
"No," in my opinion. See discussion above.
Question 5 — If the answer to 4 above is yes, would the Civil Servicecommission be liable to the disqualified candidate for discrimination orother alleged unfairness in the moral character determination which wasmade by the Chief?
 A response to this question is unnecessary. *Page 9 
 Question 6 — Under what authority could the Civil Service Commissionchallenge a disqualification by the Chief pursuant to his authoritypursuant to the Commission of Law Enforcement Standards statutes andregulations?
A response to this question is unnecessary.
Question 7 — Are the names, scores and rankings of entry level,non-employee fire or police applicants subject to release pursuant to anFOI request? Does A.C.A. § 14-51-301(b)(2)(B)(i) provide any basis forexempting such entry level scores and rankings of other applicants ifthe FOIA request is made by a fellow applicant?
Assuming that you are referring to existing records containing this information,[2] the answer to the first part of this question is generally "yes," in my opinion. Such records plainly fit within the Freedom of Information Act's definition of "public records," A.C.A. § 25-19-103(5)(A) (Supp. 2007), so that the only issue is whether they are covered by a specific exemption in that act or some other pertinent law. Id. at-105(a)(1)(A) (providing that all public records shall be open to inspection and copying "[e]xcept as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise."). Regarding possible exemptions under the FOIA, this office has consistently taken the position that records of this nature pertaining to non-employees should not be classified as "personnel records," which are protected from release to the extent their disclosure would constitute a "clearly unwarranted invasion of personal privacy," id. at-105(b)(12). See Op. Att'y Gen. 2003-015 (and opinions cited therein). See also Op. Att'y Gen. 2005-086. I will not restate herein the basis for this conclusion, but instead refer you to Opinion2003-015 for the analysis.[3] I find no other possible exemption in the FOIA for records of the names, score and rankings of non-employee fire or police applicants. *Page 10 
With regard to A.C.A. § 14-51-301(b)(2)(B)(i), this provision in my opinion only exempts the blank examinations, not the test results. Accordingly, the answer to the second part of the above question is "no," in my opinion.
Subsection 14-51-301(b)(2) requires that the rules prescribed by the board of civil service commissioners shall include the following:
 (A) Open competitive examinations to test the relative fitness of applicants for the positions.
 (B)(i) The examinations are to be protected from disclosure and copying, except that the civil service commission shall designate a period of time following the conclusion of testing in which an employee taking an examination shall be entitled to review his or her own test results.
 (ii) During the employee review process, the employee may not copy test questions in any form whatsoever[.]
A.C.A. § 14-51-301(b)(2) (Supp. 2007).
Subsection 14-51-301(b)(2)(B)(i) clearly exempts "[t]he examinations" from inspection and copying under the FOIA. In my opinion, this means that the testing materials are not subject to disclosure.Compare A.C.A. § 25-19-105(b)(14) (subsection of the FOIA exempting "[m]aterials, information, examinations, and answers toexaminations utilized by boards and commissions for purposes of testing applicants for licensure by state boards or commissions.") Emphasis added. The subsection allows applicants access to their own test results. But in my opinion, A.C.A. § 14-51-301(b)(2) is silent regarding access to others' scores. The Arkansas Supreme Court has steadfastly interpreted the FOIA liberally in favor of openness and has construed exemptions narrowly, so as to serve the FOIA's purpose of assuring that the public is "fully apprised of the conduct of public business."Waterworks v. Kristen Invest. Prop., 72 Ark.App. 37, 43, 32 S.W.3d 60
(2000). See also Orsini v. State, 340 Ark. 665, 13 S.W.3d 167 (2000). These precepts compel the conclusion that the exemption under A.C.A. § 14-51-301(b)(2)(B)(i) is limited to the blank tests. Had the legislature intended to provide an exemption for answers to the examinations, it could easily have done so, similar to A.C.A. §25-19-105(b)(14), supra, with respect to licensing examinations. *Page 11 
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The Commission's rules state that the selection process for hiring by the CPD may be based on any combination of "written, oral, or practical examinations" to be created and administered by either the Commission or the Human Resources Department, "with the aid of outside professionals, when deemed necessary." Rules and Regulations,supra, Chp. 2, § 4. The construction of these rules is outside the scope of this opinion. See generally Op. Att'y Gen. 2001-306. I will note, however, that pursuant to A.C.A. § 14-51-301(b)(4)(A)(i) (Supp. 2007), the Commission's rules must provide for "[t]he creation and maintenance of current eligibles lists for each rank of employment in the departments, in which shall be entered the names of the successful candidates in the order of their standing in the examination." The Commission therefore clearly has the general power and duty to prescribe the selection process.
[2] A custodian is not required to compile information or create records in response to FOIA requests. See A.C.A. § 25-19-105(d)(2)(C) (Supp. 2007).
[3] This office has also previously acknowledged the possible inequities that can result when applying the FOIA's personnel records exemption in the job application context, specifically in instances where interview scores of both non-employees and current employees are at issue. See Ops. 2005-086 and 2003-015. Your particular question does not call for further review of these issues. You should be aware, however, that there is a need for legislative clarification in this area. See Op. 2005-086. *Page 1