Adrian REED *v.* STATE of Arkansas

CR 97-661                                        957 S.W.2d 174

Supreme Court of Arkansas
Opinion delivered December 4, 1997

*Young & Finley*, by: *Richard H. Young*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Adrian Reed appeals the judgment of the Pope County Circuit Court convicting him of driving while intoxicated (DWI), second offense, and sentencing him to nine months in jail, suspending his driver's license for twelve months, and assessing a fine of $2,500. This appeal was certified to us from the court of appeals on the basis that it presents a question requiring statutory interpretation; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(d). Appellant's sole point for reversal is that the trial court erred in failing to suppress the evidence obtained as a result of an illegal stop and arrest. We find no error and affirm.

Appellant was arrested for DWI on June 15, 1996. He was initially stopped and detained by Constable Bill Parks in Pope County near Pea Ridge, which is outside the constable's jurisdiction of Jackson Township. Appellant moved to suppress the evidence that resulted from his arrest on the ground that the constable lacked the authority to pursue a criminal suspect beyond his jurisdiction without first having a reasonable belief that the suspect had committed a felony. The trial court concluded that Constable Parks was a peace officer and that Ark. Code Ann. § 16-81-301 (1987) authorized him to stop and detain Appellant under the circumstances, even though the constable admittedly did not suspect that Appellant had committed a felony. The trial court accordingly denied Appellant's motion to suppress, and he was found guilty of the charge by a jury.

On appeal, Appellant challenges Constable Parks's authority to arrest him outside the constable's jurisdiction. He contends that pursuant to Ark. Code Ann. § 16-19-301 (Repl. 1994) a constable is not permitted to arrest a person for a misdemeanor offense outside the jurisdiction of his township. He asserts that such an arrest is only permitted if the constable reasonably believes that a felony has been committed within his jurisdiction.

Section 16-19-301, titled "Peacekeeping duties and authority — Neglect of duty," provides in pertinent part:

> (a) Each constable shall be a conservator of the peace in his township and shall suppress all riots, affrays, fights, and unlawful assemblies, and shall keep the peace and cause offenders to be arrested and dealt with according to law.
>
> . . . .
>
> (d) *Nothing in this section shall prevent the fresh pursuit by a constable of a person suspected of having committed a supposed felony in his township, though no felony has actually been committed, if there are reasonable grounds for so believing.* "Fresh pursuit" as used in this section shall not necessarily imply instant pursuit, but pursuit without unreasonable delay. [Emphasis added.]

Appellant asserts that the language in subsection (d) prohibits a constable from engaging in the fresh pursuit of any person unless that person is suspected of having committed a felony.

The State argues that the trial court correctly ruled that a constable's authority to freshly pursue a suspect beyond his jurisdiction is derived from section 16-81-301. The State argues that because section 16-81-301 was passed subsequent to the passage of section 16-19-301, this court should conclude that the later act controls.

Section 16-81-301, which is part of the Uniform Act on Intrastate Fresh Pursuit, provides:

> Any peace officer of this state in fresh pursuit of a person who is reasonably believed to have committed a felony in this state or has committed, or attempted to commit, any criminal offense in this state in the presence of such officer, or for whom the officer holds a warrant of arrest for a criminal offense, shall have the authority to arrest and hold in custody such person anywhere in this state.

The State contends that a constable is included within the definition of the term "peace officer" as used in section 16-81-301. As such, the State asserts that Constable Parks had the authority to pursue Appellant beyond the jurisdiction of his township for a misdemeanor offense that was committed in the officer's presence.

The sole issue for our resolution is whether a constable's authority to engage in the fresh pursuit of a person suspected of committing a misdemeanor beyond the limits of the constable's jurisdiction originates from section 16-19-301 or from section 16-81-301. Both statutes were passed during the same legislative session; the act containing section 16-81-301 was passed one day after the act containing section 16-19-301. Appellant contends that because section 16-19-301 specifically addresses the powers and duties of constables, it should prevail over section 16-81-301, which, Appellant asserts, only generally addresses the authority of "peace officers" to engage in fresh pursuit. We disagree.

■ ■ Statutes relating to the same subject should be read in a harmonious manner if possible. *City of Ft. Smith v. Tate*, 311 Ark. 405, 844 S.W.2d 356 (1993). All legislative acts relating to the same subject are said to be *in pari materia* and must be construed together and made to stand if they are capable of being reconciled. *Id.* We adhere to the basic rule of statutory construction, which gives effect to the intent of the legislature, making use of common sense and giving the words their usual and ordinary meaning. *Kyle v. State*, 312 Ark. 274, 849 S.W.2d 935 (1993). In attempting to construe legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate matters that throw light on the subject. *Tate*, 311 Ark. 405, 844 S.W.2d 356. The commentary to a statute is a highly persuasive aid to construction, although it is not controlling over the clear language of the statute. *Kyle*, 312 Ark. 274, 849 S.W.2d 935.

■ In construing two acts on the same subject, we first must presume that when the General Assembly passed the later act, it was well aware of the prior act. *Salley v. Central Arkansas Transit Auth.*, 326 Ark. 804, 934 S.W.2d 510 (1996). We must also presume that the General Assembly did not intend to pass an act without purpose. *See Clark v. State*, 308 Ark. 84, 824 S.W.2d 345 (1992). Furthermore, the General Assembly is presumed to have enacted a law with the full knowledge of court decisions on the subject and with reference to those decisions. *See, e.g., Scarbrough v. Cherokee Enter.*, 306 Ark. 641, 816 S.W.2d 876 (1991);

*Tovey v. City of Jacksonville*, 305 Ark. 401, 808 S.W.2d 740 (1991); *J.L. McEntire & Sons, Inc. v. Hart Cotton Co., Inc.*, 256 Ark. 937, 511 S.W.2d 179 (1974).

▮ Section 16-81-301 does not contain a definition of "peace officer." Nor is that term defined within the other provisions of the Uniform Act on Intrastate Fresh Pursuit. Be that as it may, Arkansas has long recognized that constables are peace officers. *See Winkler v. State*, 32 Ark. 539 (1877). Additionally, Ark. Code Ann. § 16-81-104 (1987), which establishes the procedures for issuing and executing arrest warrants, refers to constables as peace officers. Specifically, section 16-81-104(a)(1) provides in pertinent part that "[a] warrant of arrest may be executed by the following officers, *who are called peace officers in this code*: Sheriffs, *constables*, coroners, jailers, marshals, and police officers." (Emphasis added.) Hence, we can discern from this provision that the legislature was aware of our previous holding and intended to include constables within the definition of "peace officer."

▮ Moreover, we are not convinced by Appellant's contention that these two provisions are necessarily in conflict with one another. Instead, we view the two statutory provisions as complementary of one another, with section 16-81-301 merely broadening or enhancing the authority described in section 16-19-301(d). The plain language of section 16-19-301(d) demonstrates that this provision is not an affirmative grant of the power of fresh pursuit to constables. Rather, that section is written in the negative — that nothing in that section shall be viewed as *preventing* a constable's authority to engage in the fresh pursuit of suspected felons. Section 16-81-301, on the other hand, specifically provides to all peace officers in this state the authority to engage in the fresh pursuit of suspects beyond their particular jurisdictions. The legislative commentary on the Uniform Act on Intrastate Fresh Pursuit demonstrates that the General Assembly intended this Act to be a comprehensive statement of the law on fresh pursuit within the geographical boundaries of this state. The prefatory note to the Act reflects:

> A great need was filled by the Interstate Fresh Pursuit Act, drafted by the Interstate Commission on Crime, to prevent criminals from utilizing state lines to handicap the police. This is

proven by its almost instant enactment in some two thirds of the states. Furthermore, there have been repeated requests from the police to extend the principles of the interstate act to permit fresh pursuit of criminals across county and municipal lines.

The Act on Interstate Fresh Pursuit is the result. This act follows the sovereignty into another, it applies not only to felonies, but to any criminal offense committed in the presence of the officer, or to a person for whom an officer holds a criminal warrant. Simple provisions, as in the case of the interstate act, are made to safeguard the rights of the person arrested. The requests of law enforcement authorities themselves prove the need for this new, simple, and sensible law.

■ Considering the language of both statutes, the respective subject matters, and the objectives sought to be accomplished by the legislature in passing them, we conclude that although a constable's general powers and duties are established by section 16-19-301, a constable's authority to engage in the fresh pursuit of criminal suspects, whether suspected of committing felonies or misdemeanors, is derived from section 16-81-301. Were we to hold that a constable is not included within the definition of the term "peace officer" found in section 16-81-301, the Act's clearly expressed purpose of preventing criminal suspects from taking advantage of jurisdictional boundaries would surely be thwarted. Given that section 16-19-301 does not affirmatively establish a constable's authority to engage in fresh pursuit, but merely provides that the authority to pursue suspected felons should not be taken from such officers, these two related statutes are capable of being reconciled and, therefore, both should stand.

■ Accordingly, we conclude that the trial court did not err in determining that, under the circumstances of this case, Constable Parks was acting as a peace officer and, as such, had the authority to pursue Appellant beyond the limits of his township on the ground that Appellant had committed an offense in the constable's presence.

Affirmed.