Cheryl Paslay BREWER and Marvin Brewer
*v.* ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 00-98                                    43 S.W.3d 196

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered November 8, 2000
[Substituted Opinion on Grant of Rehearing
delivered April 25, 2001.]

*James G. Petty, Jr.,* for appellant Cheryl Brewer.

*J. Leon Johnson,* for appellant Marvin Brewer.

*Kathy L. Hall,* for appellee.

S AM BIRD, Judge. In a previous opinion, *Brewer v. Arkansas Dep't of Human Servs.*, 71 Ark. App. 364, 32 S.W.3d 22

(2000), we considered an appeal from the decision of the White County Chancery Court, Juvenile Division, which found that Logan Brewer is a dependent-neglected child and refused to order reunification services or place Logan in the home of his paternal grandmother. The points of appeal were raised in separate briefs filed by appellants. We reversed only on the point raised individually by Cheryl Brewer, agreeing that the trial court erred in refusing to order reunification services. Appellee, Arkansas Department of Human Services, now has filed a petition for rehearing, in which it makes an argument, supported by persuasive authority, that our original decision was erroneous. After having carefully reconsidered the issue, we agree with ADHS. Therefore, we grant the petition for rehearing and issue this substituted opinion.

Logan was born to Cheryl and Marvin Brewer on August 26, 1999. On August 27, 1999, the Arkansas Department of Human Services (ADHS) filed a petition for emergency custody of the child, alleging that he is dependent-neglected as defined by Ark. Code Ann. § 9-27-303(15) (Supp. 1999). ADHS based its request for emergency custody on the fact that Cheryl's other child had been previously adjudicated dependent-neglected and that no reunification services were ordered. The chancellor granted ADHS's petition, and on September 2, 1999, the chancellor found that there was probable cause for emergency custody to continue until the adjudication hearing scheduled for October 7, 1999.

The adjudication hearing recounted the numerous injuries suffered by Logan's nineteen-month-old sibling, Makila. Makila was airlifted from Searcy to Arkansas Children's Hospital in Little Rock. When she arrived, she was placed on a ventilator but remained in danger of death. Makila presented with a low blood count and a large hematoma on her back that was the likely result of a direct blow to the back. A pediatrician at the hospital noted that Makila had multiple bruises of different ages and stages covering her body. The pediatrician testified that the child had bruises on the tops of her ears, around her eyes, and along her abdomen, legs, and arms. The child also exhibited two black eyes, tiny rectal tears consistent with sexual abuse, and bruising on her labia majora. Makila also suffered from retinal hemorrhages in both eyes, had liver enzymes three to four times normal levels, and required a blood transfusion and intravenous fluids. Based on these observations, the pediatrician ordered that x-rays, bone scans, and a CT scan be performed on the child.

A radiologist testified that the CT scan revealed bleeding around Makila's brain in the subdural space. The scan revealed fresh bleeding on the left side of the brain and evidence of older bleeding on the right side of the brain, indicating repeated trauma. The doctor testified that injuries of the type suffered by Makila were usually only seen in high-speed vehicle accidents and in instances where a child has been shaken. A skeletal survey revealed an old left-femur fracture. A later bone scan revealed that both of the child's ulnas had been fractured. The radiologist testified that the fractures were consistent with fractures a child receives from defending herself from direct blows. The child also suffered a fracture of the left scapula and injuries to her rib cage. The radiologist testified that the injuries to the rib cage were consistent with a child being squeezed while being shaken; the injuries were likely suffered within three to five days of the child's being admitted to the hospital.

Dr. Melinda Markham testified that Cheryl stated that she was not at home when Makila was picked up by the ambulance, but that Cheryl thought the ambulance was called because Makila might have suffered a seizure. According to Dr. Markham, Cheryl stated that she was aware that Marvin had been spanking the child and hitting her about the head. Dr. Markham also stated that Cheryl indicated that she had spanked Makila. Dr. Markham further testified that Cheryl admitted that Marvin had to restrain her from "going after" the child on one occasion and that Cheryl had told Marvin, "We have to stop," on the way to the hospital.

Based on this testimony and photographs showing Makila's condition when she was admitted into the hospital, the court concluded that Cheryl and Marvin were unfit parents and that Logan was a dependent-neglected child. As mentioned previously, the court also refused to order reunification services.

Appellants argue that the trial court erred in basing its finding that Logan is a dependent-neglected child solely on alleged abuse to his sibling. They contend that a finding that a child is dependent-neglected must be based on the treatment of the child at issue. For a second point, appellant Cheryl Brewer argues that the trial court erred in refusing to order reunification services.

■ The juvenile code requires proof by a preponderance of the evidence in dependency-neglect proceedings. Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 1999). We review a chancellor's findings of fact *de novo*, and will not set them aside unless they are clearly

erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. Ark. R. Civ. P. 52(a). *See also Johnson v. Arkansas Dep't of Human Serv.*, 55 Ark. App. 392, 935 S.W.2d 589 (1996). A finding is clearly erroneous when, although there is evidence to support the finding, after reviewing all of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Nichols v. Wray*, 325 Ark. 326, 925 S.W.2d 785 (1996).

A dependent-neglected juvenile is defined as "any juvenile who as a result of abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness is at substantial risk of serious harm." Ark. Code Ann. § 9-27-303(15)(A)(Supp. 1999). Arkansas Code Annotated section 9-27-302(2)(B) provides that one purpose of the Juvenile Code is "[t]o protect a juvenile by considering the juvenile's health and safety as the paramount concerns in determining whether or not to remove the juvenile from the custody of his parents or custodians...."

█ Here we have overwhelming evidence that Logan's sister, Makila, was abused by Cheryl or Marvin, or both. Even if one of the parents could successfully deflect blame for the actual injuries Makila suffered to the other parent, the uncontroverted testimony establishes that her injuries were noticeable and inflicted over a long period of time. Clearly a parent who does not notice such obvious signs of abuse of a child living within his or her home is unfit.

█ We do not reach appellant's argument that ADHS failed to establish any abuse to Logan. Section 9-27-325(h)(2)(B) explicitly states that a dependent-neglected child is one at risk of serious harm from an unfit parent. Parental unfitness is not necessarily predicated upon the parent's causing some direct injury to the child in question. Such a construction of the law would fly in the face of the General Assembly's expressed purpose of protecting dependent-neglected children and making those children's health and safety the juvenile code's paramount concern. To require Logan to suffer the same fate as his older sister before obtaining the protection of the state would be tragic and cruel.

For her separate point on appeal, Cheryl contends that the court erred in refusing to order reunification services. Arkansas Code Annotated section 9-27-303(35)(C) (Supp. 1999) provides:

> Reasonable efforts to reunite a child with his parent or parents shall not be required in all cases. Specifically, reunification shall not

be required if a court of competent jurisdiction has determined that a parent has:

(i) Subjected the child to aggravated circumstances;

(ii) Committed murder of any child;

(iii) Committed voluntary manslaughter of any child;

(iv) Aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter;

(v) Committed a felony assault that results in serious bodily injury to any child; or

(vi) Had the parental rights involuntarily terminated as to a sibling of a child.

After considering the statute, the trial court concluded that it could refuse to order reunification services pursuant to section (v) after finding that Cheryl had committed a felony assault that resulted in a serious bodily injury to any child. The court ruled that the statute does not require a formal adjudication of Cheryl's guilt by a circuit court as a prerequisite to its refusal to order reunification services. Rather, the court concluded that it, as the Juvenile Division of the White County Chancery Court, qualified as a court of competent jurisdiction and that, as such, it could determine from the evidence before it whether Cheryl had committed felony assault for purposes of Ark. Code Ann. § 9-27-303(35)(C)(v).

Cheryl argues that the statute should be interpreted to mean that before an order for reunification services could be refused by the Juvenile Division, it would be necessary for Cheryl already to have been *convicted* of a felony assault resulting in serious bodily injury to a child. She argues that only a court with adult criminal jurisdiction is competent to adjudicate her guilt of a felony assault, and that since no such adjudication had occurred, the Juvenile Division was required to order reunification services for her.

■ We agree with the trial court's interpretation of the statute. In doing so, we note that the statute does not require the *conviction* of a parent. Rather, it only provides that reunification services are not required if a court of competent jurisdiction has *determined* that the parent has committed any of the acts set forth in subsections (i)—(vi) of the statute.

■ The beginning point in interpreting this statute, as with all statutes, is to construe the words just as they read and to give them their ordinary and accepted meaning. *State v. Johnson*, 317 Ark. 226, 876 S.W.2d 577 (1994). The basic rule of statutory construction is to give effect to the intent of the legislature, making use of common sense. *Id*. In attempting to construe legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate matters that throw light on the matter. *L. H. v. State*, 333 Ark. 613, 973 S.W.2d 477 (1998), citing *Reed v. State*, 330 Ark. 645, 957 S.W.2d 174 (1997).

If the legislature had meant to require an adjudication of guilt and a conviction of the parent for one or more of the offenses mentioned in the statute as a prerequisite to the court's denial of reunification services, it would have said so. Furthermore, as ADHS persuasively argues in its petition for rehearing, in view of the statute's overriding purpose to provide protection to children from abusive parents, the statute cannot be reasonably construed to mean that the Juvenile Division, after determining that a child is dependent-neglected as a result of such abuse, is required to order reunification services with the abusive parent until such time as the parent is tried and convicted of a felony.

■ We hold that, for the purposes of Ark. Code Ann. § 9-27-303(35)(C), the Juvenile Division is a court with competent jurisdiction to determine whether a parent has committed such acts as would constitute offenses of the type referred to in that section, and that, having made that determination, the trial court did not err in refusing to order reunification services to Cheryl.

For their final point on appeal, Cheryl and Marvin argue that the lower court erred in failing to place Logan in the home of his paternal grandmother, Obera Norman. At the hearing, appellants requested that Logan be placed with his paternal grandmother based on an ADHS home study concluding that Norman's home would be the most stable environment for Logan. An ADHS representative, however, indicated that she had concerns about placing Logan in Norman's home. Specifically, the representative was concerned that Norman did not believe Cheryl and Marvin had abused Makila. The ADHS representative did not think Norman would properly protect Logan from his parents.

At the hearing, Norman testified that if she were ordered to do so, she would not allow her son and Cheryl to visit with Logan.

Norman further indicated, however, that she was of the opinion that Marvin and Cheryl would not hurt their children. She testified that she believed Makila got her injuries while Marvin was attempting to perform CPR.

█ Here, there was overwhelming medical testimony listing Makila's injuries, testimony that Norman thought those injuries were suffered during a session of CPR, and the opinion of the ADHS representative that Norman would not protect Logan from Cheryl and Marvin. Giving due regard to the trial court's ability to determine credibility, we cannot conclude that the trial court erred in determining that Logan would not be safe with his paternal grandmother.

Affirmed.

PITTMAN, JENNINGS, CRABTREE, and BAKER, JJ., agree.

HART, ROBBINS, NEAL, and ROAF, JJ., concur in part and dissent in part.

OLLY NEAL, Judge, concurring in part; dissenting in part. I concur with the majority's holding with respect to the chancellor's finding that Logan Brewer is a dependent-neglected child and the chancellor's refusal to place Logan in the home of his paternal grandmother. However, I disagree with the majority's holding that a chancery court has jurisdiction to determine that a person has committed a felony assault.

In its substituted opinion, the majority adopts a rule allowing a juvenile judge to determine that a person has committed a criminal act regardless of the fact that the person has been neither convicted of nor charged with violating the criminal law. The juvenile court has jurisdiction over proceedings in which a juvenile is alleged to be dependent-neglected. Ark. Code Ann. § 9-27-306(a)(1) (Repl. 1998). The Arkansas Constitution, however, grants the circuit courts exclusive jurisdiction over felony charges. Ark. Const. art. 7, § 11. See also State v. Pulaski County Circuit Court, 326 Ark. 886, 934 S.W.2d 916 (1996).

In the instant action, the Arkansas Department of Human Services (DHS) alleged that appellant had committed a felony assault on her daughter in its request that the court refuse to order reunification services, and in arriving at its decision to refuse to

order the services, the court determined that appellant had in fact committed such a felony.[1] The determination of whether a person has committed a felony is reserved to the circuit courts. Consequently, the chancery court was without jurisdiction to make that determination.

The issue presented in this case is analogous to that addressed by our supreme court in *In the Matter of Estate of F.C.*, 321 Ark. 191, 900 S.W.2d 200 (1995). In that case, the mother of a child filed a petition with the probate court for appointment of an administrator and a petition for paternity, claiming that her child was the illegitimate daughter of the deceased. The mother stated that she filed the petitions for the sole purpose of entitling the child to whatever military and other government benefits she would be entitled to as a result of the deceased being her natural father. In Arkansas, probate courts have jurisdiction over the administration, settlement, and distribution of decedents' estates and the determination of heirship. Ark. Code Ann. § 28-1-204 (1987). Chancery courts, however, have concurrent jurisdiction with the juvenile division of chancery court in cases and matters relating to paternity. Ark. Code Ann. § 9-10-101 (Repl. 1998); Ark. Code Ann. § 16-13-304(b)(9) (Repl. 1999); Ark. Const. amend. 67. The code further provides that an illegitimate child may inherit property from her father in certain circumstances. Ark. Code Ann. § 28-9-209 (1987). One of those circumstances is that a court of competent jurisdiction has established the paternity of the child or has *determined* the legitimacy of the child. *Id.* In *In the Matter of Estate of F.C.*, *supra*, the supreme court held that Ark. Code Ann. § 28-9-209 clearly contemplates that even where the illegitimate child is attempting to inherit property from her father, the probate court cannot establish paternity or

---

[1] As stated in the substituted opinion, one of the grounds on which a court can refuse to order reunification services is if a court of competent jurisdiction has determined that the parent subjected the child to aggravated circumstances. Ark. Code Ann. § 9-27-303(35)(c)(1). The term "aggravated circumstances" includes a determination by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-303(48).

In the instant action, Cheryl's statements that on one occasion her boyfriend had to keep her from "going after" Makila and that she told her boyfriend "we have to stop" after Makila was taken to the hospital indicate that she may have been an active participant in the abuse that resulted in Makila's injuries. However, as neither DHS nor the majority raise the argument, a dissenting opinion is not the proper place to consider the alternative theory that the court might have refused to order reunification services because Cheryl subjected Logan to circumstances indicating that those services would have likely been futile by giving birth to him in such close proximity to the time that her other daughter was being physically abused.

determine the legitimacy of the child because it is not a court of competent jurisdiction.

Notably, the language used in the statute at issue in *In the Matter of Estate of F.C.*, is identical to the language at issue in the instant action. The holding in *In the Matter of Estate of F.C.* appears to stand for the proposition that when the phrase "court of competent jurisdiction" is employed in a statute to refer to a particular type of judicial determination, that phrase describes the court traditionally empowered to decide that particular type of issue. Yet, in the instant action, the majority holds that a chancery court may make the determination constitutionally reserved to the circuit courts that a person has committed a crime.

In Arkansas, no offense has been designated "felony assault." Instead, the legislature has labeled aggravated assault as a Class D felony. Ark. Code Ann. § 5-13-204 (Repl. 1997). A person commits an aggravated assault, "if, under circumstances manifesting extreme indifference to the value of human life, he purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person." Ark. Code Ann. § 5-13-204(a). Thus, for the chancellor to have determined that appellant committed a felony assault, it had to determine that appellant purposely engaged in conduct that created a substantial danger of death or serious physical injury to a child under circumstances manifesting extreme indifference to the value of human life.

The substituted opinion recites, "The beginning point in interpreting this statute, as with all statutes, is to construe the words just as they read and to give them their ordinary and accepted meaning. The basic rule of statutory construction is to give effect to the intent of the legislature, making use of common sense." (Internal citations omitted.) The majority goes on to conclude that if the legislature had meant to require a conviction for a felony assault by the circuit courts that it would have said so. The legislature does just that in Ark. Code Ann. § 9-27-341(b)(3)(B)(ix). In addressing the termination of parental rights, the code provides in relevant part that an order terminating parental rights shall be based upon a finding by clear and convincing evidence that:

(ix)(a) The parent is found by a court of competent jurisdiction to:
(1) Have committed murder or voluntary manslaughter of any child or to have aided or abetted, attempted, conspired, or solicited to commit such murder or voluntary manslaughter;

    (2) Have committed a felony assault that results in serious bodily injury to any child;

    (3) Have subjected the child to aggravated circumstances; or

    (4) Having had his parental rights involuntarily terminated as to a sibling of the child.

Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*). The statute continues, "Nothing in this chapter shall be construed to require reunification of a surviving child with a parent who has been *found guilty* of any of the offenses listed in subdivision (b)(3)(B)(ix)(*a*) of this section." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*b*). (Emphasis added.) In determining the intent of the legislature, this court must also look at the whole act and, as far as practicable, give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. *Brandon v. Arkansas Pub. Serv. Comm'n*, 67 Ark. App. 140, 992 S.W.2d 834 (1999). Here, save use of the words "determined" and "found," the language of section 9-27-303(35)(c) and section 9-27-341((b)(3)(B)(ix)(*a*) is identical, and the legislature makes clear that "found by a court of competent jurisdiction to have committed aggravated assault" means "found guilty." When we view the juvenile code as a whole, common sense, harmony, and consistency dictate that the phrase "court of competent jurisdiction" be given the same interpretation in both sections.

  Moreover, had the legislature intended for the refusal to order reunification services to be based solely on a chancery court's determination, it would not have employed the word "felony" with all of its criminal undertones. Rather, the legislature would have simply allowed a chancery court to determine that a person has committed an assault, a civil injury, resulting in a serious bodily injury to a child. Furthermore, if the legislature had intended to authorize the chancery court that was hearing the adjudication or termination petition to determine whether the parent had committed such a felony assault, surely it would have simply referred to "the court" rather than a "court of competent jurisdiction."

  The repercussions of allowing the chancery court to determine that a person has committed a felony assault absent a conviction are obvious. What if the parent has been found not guilty of an aggravated assault on a child other than the one that is the subject of a dependent-neglected hearing prior to a chancellor's *determination* that the parent has *committed* a felony assault? Nothing in the substituted opinion or the statute would prevent the refusal to order reunification services in such a situation. Even worse, what if a

circuit court finds a parent not guilty of aggravated assault after the chancellor has refused to order reunification services based on the chancellor's determination that the parent committed the assault? Again, the substituted opinion provides no answer or guidance as to how our courts would rectify such conflicting results.

HART, ROBBINS, and ROAF, JJ., joins.