WAYMOND M. BROWN, Judge. |7The majority has affirmed a trial court order based on unsubstantiated inferences drawn from Ms. Goodwin’s own testimony, an ignorance of the statutory definition of “neglect,” and improper and inappropriate reliance on Brewer.[1] I am left with a definite and firm conviction that a mistake has been committed. Accordingly, I dissent. A parent’s interest in the companionship, care, custody, and management of her child rises to the level of a constitutionally secured right, and the State registers no gains toward its stated goals of protecting children when it separates a fit parent from the custody of her children.[2] Adjudication hearings are held to determine whether the 18allegations in a petition are substantiated by the proof.[3] The State bears the burden of establishing dependency-neglect by a preponderance of the evidence.[4] Here, although the trial court based its order on such inferences, the Department presented no evidence of Ms. Goodwin’s prior history with either its services or similar services from other states. No evidence was presented to substantiate the cause for removal of any of the children except through Ms. Goodwin’s own testimony, in which she stated that one child was removed at birth because he was severely premature and she would not have been able to support his medical needs. The record also demonstrates that the Department never visited the family home, despite citing Ms. Goodwin’s lack of stable housing as a basis for the adjudication. In the case before us we are presented with a young mother with no legal training who is facing the State of Arkansas. In her attempt to be forthright with hospital staff, she disclosed that she previously had children but she was no longer the custodial mother of those children. Rather than simply accessing the records in regard to these older siblings, so as to support grounds for whether or not her newborn should be adjudicated dependent-neglected, the Department instead set the stage for the inference that Ms. Goodwin was not a fit mother because she did not exercise custody over her other children. Affirming such a practice sets a dangerous precedent whereby the Department can put families on the fast-track to parental termination without doing the homework that the taxpayers pay them to do. bln addition to failing to retrieve documentation evidencing the cause of non-custody of Ms. Goodwin’s older children, the circuit court seems to have overlooked our statutory definition of “neglect.” The circuit court based the adjudication on Ms. Goodwin’s instability of housing and income. “Neglect” means those acts or omissions of a parent that constitute failure or refusal to provide the necessary food, clothing, etc., for the juvenile’s well-being, except when the failure “is caused primarily by the financial inability of the person legally responsible and no services for relief have been offered.”[5] This plain language reading of this statutory definition states a two-part test that, when met, excludes the act or omission from constituting neglect. Ms. Goodwin’s situation meets this test. First, any argument that the Department can make for neglect would have to be a result of financial inability. Second, nothing in the record indicates that any services were offered to Ms. Goodwin to help her financially or with her housing. According to our law, these services should have been offered before the adjudication. Perhaps the most troubling aspect of the circuit court’s adjudication is its strong reliance on Brewer, a fact the majority chooses to ignore. The Department and the circuit court used this case to stand for the proposition that a child may be removed from a parent if that child’s older siblings suffered harm by the parent. While I understand this proposition and believe that it should hold a place in our law, Brewer is far too distinguishable for us to continue to allow lower courts to cite it as the authority for removing a child based solely on the fact that the child’s older siblings had suffered any harm whatsoever. In Brewer, the nineteen month-old sibling of the child adjudicated [ ^dependent-neglected was airlifted to the hospital, where she was placed on a ventilator and in danger of death. She had a low blood count and a large hematoma on her back that was discovered to be caused by a direct blow. She had bruises at different stages on her body, including above the ears and around the eyes. She had rectal tears consistent with sexual abuse and bruising on her labia majora. Further tests at the hospital established brain hemorrhaging and a spinal fracture. We may be able to cite this case to be relied on in the future for the purpose of justifying removal when an older sibling of a child suffered substantial and direct harm or physical or sexual abuse, but it should not be allowed as precedent in the instant case where the record indicates that the Department made no effort to discover why Ms. Goodwin no longer had custody of her children and, at best, can only point to her potential indigence as “harm” that would be suffered by the child. In summation, as my learned, seasoned, former circuit-judge colleague, writing for the majority today, has previously stated “Given the completely miniscule amount of evidence of dependency-neglect once we remove the inference of guilt, I find that the circuit court should take a second look at the case and determine if the court would still adjudicate.”[6] . Brewer v. Ark. Dep’t of Human Servs., 71 Ark.App. 364, 43 S.W.3d 196 (2001). . Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). . Ark.Code Ann. § 9-27-327(a)(l) (Supp. 2011). .Ark.Code Ann. § 9-27-325(h). . Bowie v. Ark. Dep't of Human Servs., 2013 Ark. App. 279, at 8, 427 S.W.3d 728, 732 (Wood, J., dissenting). . Ark.Code Ann. § 9-27-303(36)(A)(ii).