

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-17-224

|  |  |
|---|---|
| BROOKE ANN HANEY AND WAYNE NORRED<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | **Opinion Delivered:** September 13, 2017<br><br>APPEAL FROM THE CALHOUN COUNTY CIRCUIT COURT<br>[NO. 07JV-15-14]<br><br>HONORABLE DAVID W. TALLEY, JR., JUDGE<br><br>REVERSED |

## RAYMOND R. ABRAMSON, Judge

Appellants Brooke Ann Haney and Wayne Norred appeal a Calhoun County Circuit Court order adjudicating their infant daughter, A.N.2, dependent-neglected. On appeal, appellants challenge the circuit court's findings and argue that they are clearly erroneous. We agree and reverse the circuit court.

Appellants have had an open dependency-neglect case with the Arkansas Department of Human Services (DHS), Division of Children and Family Services (DCFS) since October 2, 2015.[1] DCFS initially removed siblings R.N. and B.N. from the home after another sibling, three-year-old A.N.1, died after drowning in a washing machine.[2]  R.N. and B.N.

---

[1] Prior to A.N.2's birth.

[2] The record reflects that Brooke lay down for a nap with the children and fell asleep; while Brooke was sleeping, A.N.1 woke up, entered the washing machine, and drowned.

were then adjudicated dependent-neglected because of A.N.1's death, and appellants were required to submit to services. The adjudication of R.N. and B.N. as dependent-neglected was not appealed.

On July 5, 2016, the circuit court held a review hearing and issued an order in regard to A.N.2, who was in utero. The court and the parties were aware that Brooke was going to return to Louisiana, where her family resided, to give birth. The court verbally ordered appellants to surrender A.N.2 to DHS upon her birth or as soon as they were discharged from the hospital and could return to Arkansas. The court memorialized its directives in a written order, but that written order had not been entered at the time of A.N.2's birth on August 25, 2016.

When A.N.2 was born in Louisiana, Brooke informed her doctor about the open case and circumstances surrounding the birth and also asked the hospital to call the child-services agency for the State of Louisiana. The agency (OCS) came to the hospital on Friday, August 26, to talk to Brooke, and Brooke gave them the number for her Arkansas caseworker, Bettye Farmer. Brooke also tried to call Farmer on Sunday, August 28, after being discharged. Because the Louisiana agency could not get in touch with Farmer before Brooke and A.N.2 were discharged, the state believed it needed to take custody of A.N.2 even though Brooke was directed to return to Arkansas and surrender her.

On August 30, 2016, Arkansas DHS filed a petition for an ex parte emergency order for protection of A.N.2 from immediate danger, acknowledging that a report of child maltreatment had been turned in to Livingston Parish, Louisiana, due to "concerns that the newborn had siblings in the custody of the Arkansas DCFS." DHS further alleged that "per

court order on 8-2-16 Calhoun County DCFS is ordered to take custody of this infant after she is born." The same day, the court granted the petition and entered an ex parte emergency order for protection of A.N.2 from immediate danger. On August 31, 2016, Louisiana OCS turned over custody of A.N.2 to Arkansas DCFS, and on September 6, 2016, the court entered an order of emergency custody finding that custody was to remain with DCFS.

On September 6, 2016, the court held a probable-cause hearing and found probable cause to remove A.N.2 because appellants "failed to notify the Department when A.N.2 was born as this Court ordered." Appellants argued that they were not directed to inform DHS of A.N.2's birth, but only to surrender her upon discharge from the hospital. The court set the case for an adjudication hearing on October 4, 2016.

At the hearing, DHS asked the court to find A.N.2 dependent-neglected "as a matter of law" in that her siblings had already been determined to be dependent-neglected. Appellants responded that DHS had to demonstrate that A.N.2 was at substantial risk of serious harm. DHS caseworker Bettye Farmer was the only witness to testify on behalf of DHS at the hearing. Farmer testified that she believed A.N.2 was at substantial risk of serious harm because she was in the "same circumstances" as A.N.1. She also stated that appellants had always been cooperative with services and with DHS while the case had been open on the two surviving siblings but that she did not believe there had been a "mindset change" because appellants maintained that A.N.1's death had been an "accident" rather than an "accident that could have been prevented."[3]

---

[3]The coroner had ruled the death an accident.

As to the obligation of the appellants upon A.N.2's birth, Farmer testified that they were under a court order to notify DHS of her birth and to surrender her to Arkansas DCFS as soon as Brooke was able to return to Arkansas from Louisiana. Farmer believed there was some ill intent but never articulated exactly how or why.

Brooke testified on her own behalf. She clarified that she knew she was under a court order to surrender A.N.2 upon her return to Arkansas and that she had made her doctor in Louisiana aware of the situation even before delivering A.N.2. She testified that immediately after the birth, she had the hospital call Louisiana OCS and that she gave OCS Farmer's phone number so the birth could be reported. She believed she had complied with the court's order.

As to her "mindset," Brooke readily acknowledged that "mistakes were made" when she had lain down to take a nap the day A.N.1 died. She said she felt responsible for it and had to live with it every day. She explained that she used the term "accident" in response to DHS "pushing it at" her like she had done something intentional. She testified that she and Wayne had completed all of the services, including drug-and-alcohol screenings, all visitations, parenting classes, and individual and separate counseling, and that she continued to attend individual counseling even though the counselor was primarily for supportive services.

At the close of the hearing, the court made an oral finding that A.N.2 was dependent-neglected because Brooke believed that DHS had no reason to take her surviving children and "there's been no change in mindset." Appellants argue that it is unclear how Brooke's

unchanged feelings about her children being taken by the state demonstrate that A.N.2 would be at substantial risk of serious harm.

On January 4, 2017, the court entered a written order setting out the basis for adjudication. Specifically, the court found that

> A.N.2 was born while her two siblings were in foster care and had not been returned to the custody of Brooke Haney. The Court noted there was discussion back at the hearing in July about A.N.2 being removed [upon her birth] and made orders at that hearing. Brooke Haney failed to act in the spirit of those orders. The Court finds A.N.2 is at substantial risk of serious harm because the parents still have family in Louisiana and the Court has no confidence that Arkansas DCFS would have been contacted about A.N.2's birth if not for the state of Louisiana. This Court does not believe there has been a change in the mindset of the parents since last October, when these children's sibling died.

In dependency-neglect cases, our standard of review on appeal is de novo, and we defer to the circuit court's evaluation of the credibility of the witnesses. *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, 389 S.W.3d 627. We do not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Figueroa v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 83. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

Adjudication hearings are held to determine whether the allegations in a petition for dependency-neglect are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1) (Repl. 2015). Dependency-neglect must be established by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(B). Arkansas Code Annotated section 9-27-303(18)(A) defines a dependent-neglected juvenile as any juvenile who is at substantial risk of serious harm as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile:

(i) Abandonment;

(ii) Abuse;

(iii) Sexual abuse;

(iv) Sexual exploitation;

(v) Neglect;

(vi) Parental unfitness; or

(vii) Being present in a dwelling or structure during the manufacturing of methamphetamine with the knowledge of his or her parent, guardian, or custodian.

This court has addressed this issue in several cases and almost always affirms the circuit court's decision to adjudicate the minor dependent-neglected. However, our court has always emphasized that it is the particular facts of the case that give rise to the affirmation of the circuit court's dependency-neglect findings, and not due solely to the status of older siblings. Here, that is exactly what the circuit court found—that A.N.2 was dependent-neglected because "we have two other children that were removed from Ms. Haney, which triggered this thing [and] the discussion back in July that it would be necessary to remove the infant because of that triggering situation."

The fact that the circuit court entered an order to remove A.N.2 even before she was born demonstrates that the court had no intention of assessing the level of risk posed to her at the time of birth, but instead concluded long before her birth that she needed to be removed solely because her siblings were in DHS's care. The circuit court also focused on appellants' "mindset." However, "mindset" alone is not a basis for adjudication. There was no testimony to explain how A.N.2 would be in the same situation as A.N.1.

Appellants argue that they cannot change the circumstances that brought DHS into their lives a year before A.N.2's birth and acknowledge that the tragedy of the situation cannot be minimized. However, it is significant that there was no other evidence of a lack

of vigilance by appellants toward their children either in the home or during the case, or a denial of responsibility regarding A.N.1's death.

Accordingly, because there was no evidence presented to support the circuit court's finding that A.N.2 would be at substantial risk of serious harm in her parents' care, the determination was clearly erroneous. Consequently, we reverse.

Reversed.

GRUBER, C.J., and HARRISON, J., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellants.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.