MIKE MURPHY, Judge
Appellant Holli Ward appeals from the November 27, 2017 order of the Greene County Circuit Court adjudicating her child dependent-neglected. She argues that the circuit court erred in adjudicating her child dependent-neglected because appellee Arkansas Department of Human Services (DHS) failed to present sufficient evidence that she was unfit. We affirm.
On August 14, 2017, DHS exercised an emergency seventy-two-hour hold on Ward's youngest child, N.A., who was two days old at the time, due to allegations involving inadequate supervision. The affidavit of facts attached\ to the petition provided that Ward currently had an open investigation in Ohio where her two other children were in the custody of the state. The affidavit also purported that Ward suffered from severe mental health issues and drug addiction, that she had attempted suicide in front of her children, and that she had not seen her children in Ohio foster care since September 2016. On August 17, 2017, the circuit court entered an ex parte order of emergency custody. A probable-cause order was entered August 21, 2017, that stipulated that probable cause existed at the time the hold was exercised and continued to exist such that it was necessary that N.A. continue in the custody of DHS.
An adjudication hearing was conducted on October 19, 2017. The pleadings and orders from the Ohio case regarding Ward's older children were admitted into evidence. Ward testified that she has an *763 ongoing case in Ohio that started in 2016 because she told someone in the emergency room at a hospital about her home at the time, which included drug abuse, physical abuse, no running water, no refrigerator, and no oven. She said, "[T]he next thing I know, they were there at the house to take my kids." She elaborated that her husband was using one of the children's urine to pass his drug tests at a Suboxone program. In return, he would get a Suboxone and sell it for heroin or crack. Ward also testified that her husband's sister lived with them and moved a drug dealer into her child's room. She also explained that her husband's sister and mother were doing sexual favors for either drugs or $20. Ward said she was on her own and had no one to turn to in Ohio and that is why she came back to Arkansas. She testified, "[A]s a matter of fact, on my way home, I died because I was so malnourished. I stopped breathing when my mom brought me home."
When asked about her June 2016 suicide attempts, Ward testified that she suffers from brain damage and could not remember that far back. She explained she has seen a doctor about the brain damage but could not remember the diagnosis the doctor gave her. Ward also acknowledged that she does have mental-health issues and that she is seeing a counselor weekly. Ward also addressed an incident when she still had custody of her other children where her husband gave her an injection with some sort of substance because she no longer could afford her prescribed medications. She could not identify the substance, but she knew it was not heroin because she had seen her husband make heroin before and she knew it to be brown.
At the conclusion of testimony, the circuit court ruled from the bench that N.A. was dependent-neglected. The court explained that it could not ignore the certified orders from the Ohio court, which reflected the following: this was not the first time Ohio had to remove her children; her children were removed because of substance-abuse issues of both parents and mental-health issues of Ward; Ward was not working the case (including getting substance-abuse treatment and completing parenting classes); and she had not been in contact with the Ohio department or seen her children since October 2016. The court described its concern with Ward's testimony that she has mental-health issues recognized by an Ohio court and that she could not remember if she attempted suicide. The court also acknowledged concern from Ward's testimony that she died on the way home to Arkansas and that she allowed her husband to inject her with some substance because she did not have her medicine. Once the court memorialized its findings into writing, this timely appeal followed.
Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A) (Supp. 2017). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325. In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. Samuels v. Ark. Dep't of Human Servs. , 2016 Ark. App. 2, at 6-7, 479 S.W.3d 596, 600. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. Id. The focus of an adjudication hearing is on the *764 child, not the parent; at this stage of a proceeding, the Juvenile Code is concerned with whether the child is dependent-neglected. Id. at 7, 479 S.W.3d 596.
Arkansas Code Annotated section 9-27-303(18)(A) defines a "dependent-neglected juvenile" as
any juvenile who is at substantial risk of serious harm as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile:
(i) Abandonment;
(ii) Abuse;
(iii) Sexual abuse;
(iv) Sexual exploitation;
(v) Neglect;
(vi) Parental unfitness; or
(vii) Being present in a dwelling or structure during the manufacturing of methamphetamine with the knowledge of his or her parent, guardian, or custodian.
On appeal, Ward argues that the court's finding that N.A. was dependent-neglected was clearly erroneous because the court relied solely on the status of the older siblings. Ward argues, citing Haney v. Arkansas Department of Human Services , 2017 Ark. App. 437, 526 S.W.3d 903, that there must be a nexus between the harm presented by the parent to the child in the prior case and the level of risk presented by the parent to the child in the current case. We agree, but her reliance on this case is misplaced, as it is distinguishable from the facts of her case.
In Haney , the parents had a child who suffered a tragic and accidental death, and a few months later a child was born to the parents and was placed in foster care. Id. The parents appealed the adjudication of their child, and we reversed, holding that there was no evidence linking the first child's accidental death to an ongoing risk of harm to the newborn when the parents had fully completed all the case-plan requirements. Id. We emphasized that it was the particular facts of the case that gave rise to the reversal of the circuit court's dependency-neglect findings and not solely the status of older siblings. Id. But we explained in Haney that the fact that the circuit court entered an order to remove the newborn child even before she was born demonstrated that the court had no intention of assessing the level of risk posed to her at the time of birth, but instead concluded long before her birth that she needed to be removed solely because her siblings were in DHS's care. Id.
On the contrary, here, the court assessed the level of risk posed to N.A. and did not adjudicate her dependent-neglected solely based on the Ohio case. There were other reasons to be concerned about N.A.'s well-being, mainly Ward's testimony that she died on the way to Arkansas, her testimony that she could not remember if she had attempted suicide, and her testimony that she allowed her husband to inject her with an unknown substance. Moreover, unlike in Haney , Ward had not completed any services related to the health and safety risks to her children in Ohio, which included mental-health and drug related issues. In Haney , the adjudication of the siblings was based on a one-time incident. Here, the adjudication of N.A.'s siblings was based on Ward's chronic problems. The ongoing case in Ohio demonstrates that Ward has unresolved issues that pose an ongoing risk of harm. And Ward did nothing to refute the Ohio court's findings. The fact that the court conducted a hearing, proceeded on inquiry, and only after hearing all the evidence pronounced the judgment supports our holding that the court assessed N.A.'s level of risk and did not base its decision solely on the status of N.A.'s siblings.
*765 Accordingly, we hold that the court's finding that N.A. was dependent-neglected based on parental unfitness was not clearly erroneous.
Affirmed.
Klappenbach and Vaught, JJ., agree.