LARRY D. VAUGHT, Judge
Secia Salinas appeals the Washington County Circuit Court's adjudication and disposition order finding AF (DOB February 27, 2003), MS1 (DOB June 4, 2009), MS2 (DOB March 31, 2013), and SN (DOB February 18, 2017) dependent-neglected.[1] We affirm.
After a hearing in a family-in-need-of-services case on May 15, 2018, the circuit court entered an order authorizing the removal of AF, MS1, and MS2 from Salinas for seventy-two hours based on allegations that despite being warned repeatedly to properly supervise her children, MS1 had been sexually abused by a thirteen-year-old neighbor. The order provided that the Arkansas Department of Human Services (DHS) had been recently providing services to the family based on a separate incident in 2016 when MS1, seven years old at the time, had been sexually abused by her eighteen-year-old half brother. The order further provided that Salinas had failed to provide ADHD medication to MS1 for two months and did not take MS1 to inpatient treatment that was recommended for her after the second instance of sexual abuse.
On May 18, 2018, DHS filed a petition for emergency custody and dependency-neglect of AF, MS1, and MS2. The affidavit of a DHS family-service worker attached to the petition stated that the family had a history with DHS dating back to 2012 that included four unsubstantiated findings (medical neglect; inadequate food and shelter; educational neglect; and environmental neglect) and four substantiated *392 findings (sexual abuse; failure to protect; inadequate supervision and threat of harm; and educational neglect). The affidavit also stated that AF, MS1, MS2, and SN had been removed from Salinas's custody based on her lack of supervision after MS1 had been sexually abused by a thirteen-year-old neighbor. It was stated that this was the second time that MS1 had been sexually abused while in Salinas's custody and that Salinas had been warned by the circuit court to provide proper supervision. The affidavit further stated that Salinas had not given MS1 her ADHD medicine for two months. An ex parte order for emergency custody was entered that same day.
A probable-cause hearing was held on May 22, 2018. The circuit court found there was probable cause to issue the ex parte order for emergency custody of AF, MS1, and MS2. A separate order was entered the same day removing SN from Salinas's care, authorizing DHS's seventy-two-hour hold on SN, and finding that probable cause existed to issue the emergency hold on SN.
At the July 5, 2018 adjudication hearing, Corporal Patrick Hanby of the Fayetteville Police Department testified that he responded to a sex-offense call on April 20, 2018. When he arrived on the scene, he spoke to the neighbor who made the report. The neighbor told the officer that she was standing outside on the balcony of her apartment looking toward the dumpster when she observed a young teenage male (later identified as LC) lying on his back with a girl about seven to nine years old (later identified as MS1) sitting on his lap having vaginal intercourse. The neighbor said that she yelled at the children to stop, but they did not. She ran inside, called the police, ran back outside and downstairs to where the children were and saw LC's penis in MS1's mouth. She said that LC's pants were at his ankles and that MS1 was not wearing pants. The neighbor yelled at the children again, telling them that she had called the police. She said the children stood up, put on their pants, and ran away.
A detective with the Fayetteville Police Department, Garrett Levine, testified that he interviewed LC, who stated that MS1 was sitting on his lap playing a game when a lady yelled at him. After the interview, Detective Levine arrested the young man for sexual assault.
Michael McHenry, an investigator with the Crimes Against Children Division of the Arkansas State Police, testified that he observed MS1's interview. McHenry stated that MS1 told the interviewer that she sat on LC's lap, and he penetrated her vagina with his fingers. MS1 said that LC also forced his penis into her mouth.
McHenry also testified about Salinas's interview. Salinas said that she had been cleaning her house on the day in question but also was keeping an eye on MS1 and LC because of "red flags" she had recently noticed. Salinas said that the previous day she had found MS1 sitting on LC's lap and that she told MS1 not to do that because it was inappropriate. Salinas also said that MS1 was not allowed to play alone with LC because on another occasion he asked if MS1 could come to his house to see some paintings, and Salinas thought that was inappropriate based on their age difference. Salinas stated that she took her eyes off the children for no more than eight minutes while she vacuumed, which she claimed is when the assault occurred. On May 4, 2018, McHenry concluded his investigation with a true finding of "sexually aggressive behavior." Major Jeff Drew of the Arkansas State Police testified that because the case concerned an out-of-home offender, the state police did not remove MS1 from Salinas's custody.
*393 DHS family-service worker Eugenia Marks testified that AF, MS1, MS2, and SN should not be returned to Salinas's custody because she failed to protect them. Marks further testified that since October 2016 there had been eight true findings[2] where MS1 was the victim.
Salinas testified at the hearing that she saw "red flags" concerning LC because she had once observed MS1 sitting in his lap. She said that she found it odd that a teenage boy would want a "little girl" to come to his house, so she prohibited it. She also stated that the boy was not allowed in her house.
Salinas admitted that on the day of the incident in question she left MS1 and MS2 in the care of AF, who was fifteen years old, while Salinas picked up her boyfriend from work. However, Salinas maintained that the sexual abuse must have happened before she left while she was vacuuming. Salinas also conceded that MS1 had been without her ADHD medicine for six to eight weeks because "Medicaid ran out" but that she was working with DHS to get the medicine.
Samuel Nino, Salinas's boyfriend and SN's father, disagreed that Salinas failed to supervise MS1. He believed LC "was going to do whatever he wanted to do whether it was with [MS1] or whether it was some other little kid."
MS1's school counselor testified that MS1's mental state had been affected due to the first instance of sexual abuse. This counselor also said that MS1's treatment was hindered because MS1 missed school. AF's school counselor testified that AF felt guilty for what happened to MS1 because AF was supposed to be watching her little sister and that AF was in inpatient treatment for self-harm behavior.
At the conclusion of the hearing, the circuit court orally adjudicated all of the children dependent-neglected as a result of sexual abuse, neglect, and parental unfitness. Thereafter, on July 5, 2018, the court entered an adjudication and disposition order finding AF, MS1, MS2, and SN dependent-neglected based on Salinas's failure to protect MS1, who was the victim of sexual abuse by a thirteen-year-old neighbor. The court noted that this was the second occurrence of sexual abuse against MS1 and that Salinas continued to place her children at substantial risk. The court also found that Salinas failed to provide MS1 the medication she required and failed to keep her in school in order to receive the counseling she required after being sexually abused by her half brother. Salinas appeals this order.
We review a dependency-neglect finding de novo, but we do not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. Hernandez v. Ark. Dep't of Human Servs. , 2013 Ark. App. 424, at 3. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake was made. Id. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. Eason v. Ark. Dep't of Human Servs. , 2012 Ark. App. 507, at 7, 423 S.W.3d 138, 141.
Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof.
*394 Ark. Code Ann. § 9-27-327(a)(1)(A) (Supp. 2017). DHS has the burden of proving by a preponderance of the evidence that AF, MS1, MS2, and SN are dependent-neglected. Ark. Code Ann. § 9-27-325(h)(1), (2)(A)(2). The focus of an adjudication hearing is on the child, not the parent. Eason , 2012 Ark. App. 507, at 8, 423 S.W.3d at 142. At this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected. Id. , 423 S.W.3d at 142.
A dependent-neglected juvenile is one at substantial risk of serious harm because of sexual abuse, neglect, or parental unfitness to the juvenile, a sibling, or another juvenile. Ark. Code Ann. § 9-27-303(18)(A). "Neglect" means those acts or omissions of a parent that constitute the failure to appropriately supervise the juvenile that results in the juvenile's being left alone at an inappropriate age or in inappropriate circumstances, creating a dangerous situation or a situation that puts the juvenile at risk of harm. Ark. Code Ann. § 9-27-303(36)(A)(iii). "Sexual abuse" includes sexual intercourse, deviant sexual activity, or sexual contact by forcible compulsion by a person younger than fourteen years of age to a person younger than eighteen years of age. Ark. Code Ann. § 9-27-303(52)(E)(i). "Deviant sexual activity" is defined as any act of sexual gratification involving: penetration, however slight, of the anus or mouth of one person by the penis of another person; or penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person. Ark. Code Ann. § 9-27-303(21)(A), (B).
On appeal, Salinas first argues that there is insufficient evidence to support the circuit court's finding that MS1 is dependent-neglected. We disagree. In this case, evidence was presented that a neighbor witnessed MS1 having vaginal and oral sex with LC. MS1 stated in her interview that LC penetrated her vagina with his finger and forced his penis into her mouth. Investigator McHenry testified that the conclusion of the Arkansas State Police investigation was a true finding of "sexually aggressive behavior." This evidence of sexual abuse alone is sufficient to support a finding that MS1 was dependent-neglected. Ark. Code Ann. § 9-27-303(18)(A) ; Lipscomb v. Ark. Dep't of Human Servs. , 2010 Ark. App. 257, at 5.
We also affirm the circuit court's finding that MS1 was dependent-neglected based on neglect and parental unfitness. In Lipscomb , our court affirmed a dependency-neglect finding based on sexual abuse, neglect, and parental unfitness where the evidence showed that the juvenile had been sexually abused by her stepfather and that the juvenile's mother suspected the abuse, failed to prevent it, and facilitated it in order to "catch" her husband in the act. There, we stated that
[a] parent has a duty to protect a child and can be considered unfit even though she did not directly cause her child's injury; a parent must take affirmative steps to protect her children from harm.
Lipscomb , 2010 Ark. App. 257, at 6.
This is the second time in two years that MS1 has been sexually abused while in the care and custody of Salinas. In 2016, MS1's half brother sexually abused her in her own home. DHS became involved with the family as a result, and Salinas was directed by the court to provide "line-of-sight" supervision. Despite the specific order of the court and the "red flags" Salinas saw concerning LC, she permitted MS1 to play with him, unsupervised, which resulted in the second instance of sexual abuse committed against MS1. Salinas's lack of supervision is directly connected to the sexual assault perpetrated by LC and the risk of future harm. This evidence meets *395 the definition of neglect. Ark. Code Ann. § 9-27-303(36)(a)(iii). Accordingly, we hold that the circuit court's finding that MS1 is a dependent-neglected juvenile-at substantial risk of serious harm based on neglect and parental unfitness-is not clearly erroneous.
Salinas contends that it was unreasonable to expect her to provide "line-of-sight" supervision at all times; nevertheless, the evidence showed that she had been watching MS1 and lost sight of her for only eight minutes while she vacuumed. However, there was also evidence that the abuse occurred when Salinas left her apartment to pick up her boyfriend. Therefore, to find merit in Salinas's assertions would require this court to act as a super fact-finder or second-guess credibility determinations of the circuit court, and that we will not do. Blanchard v. Ark. Dep't of Human Servs. , 2010 Ark. App. 785, at 11, 379 S.W.3d 686, 692. We affirm the circuit court's dependency-neglect finding as to MS1.
Salinas also challenges the sufficiency of the evidence supporting the finding that AF, MS2, and SN were dependent-neglected. She claims that there is no evidence in the record to demonstrate how the abuse suffered by MS1 by an out-of-home offender placed AF, MS2, and SN at a substantial risk of harm. She maintains that the circuit court cannot automatically adjudicate children dependent-neglected based on a sibling's status.
As set forth above, a dependent-neglected juvenile is one at substantial risk of serious harm because of sexual abuse, neglect, or parental unfitness to the juvenile, a sibling , or another juvenile. Ark. Code Ann. § 9-27-303(18)(A). Our case law and code support a circuit court's finding of dependency-neglect for any sibling of a child who has suffered neglect or abuse, i.e., the abuse or neglect of one sibling can establish that another sibling is at substantial risk of serious harm-even though there is no reason to think that the other siblings have also been actually abused or neglected. Eason , 2012 Ark. App. 507, at 9, 423 S.W.3d at 143. It is the risk of harm that is created by the sibling's abuse or neglect that makes a finding of dependency-neglect regarding the other sibling appropriate. Allen-Grace v. Ark. Dep't of Human Servs. , 2018 Ark. App. 83, at 12, 542 S.W.3d 205, 211 (citing Brewer v. Ark. Dep't of Human Servs. , 71 Ark. App. 364, 43 S.W.3d 196 (2001) ).
Parental unfitness is not necessarily predicated upon the parent's causing some direct injury to the child in question. Such a construction of the law would fly in the face of the General Assembly's expressed purpose of protecting dependent-neglected children and making those children's health and safety the juvenile code's paramount concern. To require [a sibling] to suffer the same fate as his older sister before obtaining the protection of the state would be tragic and cruel.
Id. , 542 S.W.3d at 211 (citing Brewer , 71 Ark. App. at 368, 43 S.W.3d at 199 ).
Despite the language of the statute, the circuit court should not make an "automatic" finding of dependency-neglect based solely on the dependency-neglect finding of sibling. Our court has held that it is the particular facts of the case that give rise to the affirmation of the circuit court's dependency-neglect findings and not due solely to the status of older siblings. Haney v. Ark. Dep't of Human Servs. , 2017 Ark. App. 437, at 6, 526 S.W.3d 903, 907.
In Haney , our court noted that it had addressed this issue in several cases and had almost always affirmed the circuit court's decision to adjudicate the minor *396 dependent-neglected. Id. , 526 S.W.3d at 907. Salinas relies on Haney because our court in that case reversed the circuit court's dependency-neglect finding. Her reliance on Haney is misplaced. There, the circuit court concluded before the child was born that she needed to be removed solely because her siblings were in the care of DHS; therefore, it was apparent that the circuit court failed to assess the level of risk posed to the child. Id. , 526 S.W.3d at 907.
The case at bar is more similar to Eason. There, the mother made the same argument made by Salinas-that the circuit court made an automatic finding of dependency-neglect based solely on dependency-neglect findings of siblings. Eason , 2012 Ark. App. 507, at 6, 423 S.W.3d at 141. We disagreed, finding that the circuit court conducted a hearing and reviewed the history of all three children and other evidence in assessing the risk of harm to the sibling of a child who suffered physical abuse. Id. at 9, 423 S.W.3d at 143.
Likewise, in the instant case, the circuit court did not make an automatic finding of dependency-neglect with respect to AF, MS2, and SN. The court had before it evidence of two true findings of sexual abuse against MS1 along with other evidence of Salinas's neglect and parental unfitness that included her failure to protect MS1 from sexual abuse two times. The second instance of sexual abuse occurred despite court warnings to Salinas to provide better supervision of MS1 and despite Salinas's admitted concerns about LC. There was also evidence that Salinas did not provide MS1 medication for two months, did not regularly take MS1 to school so that she could receive counseling for the trauma she suffered after being sexually abused by her half brother, and did not follow up with recommended inpatient treatment for MS1 after she had been sexually abused by LC. There was also evidence that AF was experiencing mental-health issues due to the guilt she suffered when MS1 was sexually abused the second time. Based on the totality of the evidence, the circuit court made a specific finding that all the children were at substantial risk of harm as a result of Salinas's acts or omissions. We cannot say that the circuit court's finding AF, MS2, and SN to be dependent-neglected is clearly against the preponderance of the evidence.
Affirmed.
Gladwin and Glover, JJ., agree.

Stephen Farley (deceased) was the father of AF. Jorge Moreno is the putative father of MS1, and Jose Luis Martinez is the legal father of MS1. Isaac Villafranco is the father of MS2. Samuel Nino is the father of SN. These men are not parties to this appeal.

Marks provided details of five of the true findings with MS1 as the victim: (1) educational neglect in October 2016; (2) sexual abuse in April 2017; (3) failure to protect in December 2017; (4) failure to protect in January 2018; and (5) sexual abuse in May 2018.